# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

In re:                    :      **CHAPTER 11**

                             :

**ALL LAND INVESTMENTS, LLC**   :      **BANKRUPTCY NO. 09-13790(KJC)**

                             :

              **Debtor**    :

                             :

## AMENDED DISCLOSURE STATEMENT
## WITH RESPECT TO AMENDED PLAN OF LIQUIDATION
## PROPOSED BY ALL LAND INVESTMENTS, LLC,
## DEBTOR-IN-POSSESSION

*[THIS IS NOT A SOLICITATION OF ACCEPTANCE OR REJECTION
OF THE PLAN.  ACCEPTANCES OR REJECTIONS MAY NOT BE SOLICITED
UNTIL A DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE UNITED
STATES BANKRUPTCY COURT.  THIS DISCLOSURE STATEMENT  IS BEING
SUBMITTED FOR APPROVAL, BUT HAS NOT BEEN APPROVED BY
THE UNITED STATES BANKRUPTCY COURT]*

**GARY F. SEITZ, ESQUIRE**
**RAWLE & HENDERSON LLP**
300 Delaware Avenue, Suite 1015
P.O. Box 588
Wilmington, DE 19899-0588
(302) 778-1200
Local Counsel for the Debtor

**ARIS J. KARALIS, ESQUIRE**
**ROBERT W. SEITZER, ESQUIRE**
**MASCHMEYER KARALIS P.C.**
1900 Spruce Street
————Philadelphia, PA 19103
(215) 546-4500
Lead Counsel for the Debtor

Dated: ~~January~~February 2~~1~~6, 2010

# TABLE OF CONTENTS

**PAGE #**

1. **INTRODUCTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **1**

2. **SUMMARY OF PLAN** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **1**

3. **DISCLAIMERS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **3**

4. **INFORMATION ABOUT THE REORGANIZATION PROCESS** . . . . . . . . . . . . . **4**
   4.1    **Brief Explanation of Chapter 11** . . . . . . . . . . . . . . . . . . . . . . . . . . . **4**
   4.2    **Purpose of Disclosure Statement** . . . . . . . . . . . . . . . . . . . . . . . . . . **5**
   4.3    **Notice to Holders of Claims and Interests** . . . . . . . . . . . . . . . . . . . **5**
   4.4    **Solicitation Package** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **5**
   4.5    **Eligibility to Vote** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **5**
   4.6    **General Voting Procedures and Voting Deadline** . . . . . . . . . . . . . . **6**
   4.7    **The Confirmation Hearing** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **7**
   4.8    **Acceptances Necessary to Confirm Plan** . . . . . . . . . . . . . . . . . . . . **7**
   4.9    **Confirmation of The Plan Without The Necessary Acceptances** . . . . . . . . . **7**
   4.10   **Best Interest of Creditors** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **8**

5. **GENERAL INFORMATION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **9**
   5.1    **Overview of the Debtor's Business** . . . . . . . . . . . . . . . . . . . . . . . . **9**
   5.2    **The Debtor's Pre-Petition Debt** . . . . . . . . . . . . . . . . . . . . . . . . . . **10**
   5.3    **Events Leading to Chapter 11 Filing** . . . . . . . . . . . . . . . . . . . . . . **10**
   5.4    **Continuation of Business; Stay of Litigation** . . . . . . . . . . . . . . . . . **11**
   5.5    **Significant Events During the Bankruptcy Proceeding** . . . . . . . . . . . . **11**
   5.6    **Claims Held By Affiliates and Insiders** . . . . . . . . . . . . . . . . . . . **12**

6. **THE PLAN** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **13**
   6.1    **Classes of Claims and Interests** . . . . . . . . . . . . . . . . . . . . . . . . . . **13**
   6.2    **Unclassified Claims** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **13**
   6.3    **Estimation of Claims** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **14**
   6.4    **Treatment of Claims and Interests** . . . . . . . . . . . . . . . . . . . . . . . **14**
            Class 1.   **Pre-Petition Real Estate Tax Claims and Other Secured Claims of Governmental Units** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **15**
            Class 2. **Secured Claims of Citizens** . . . . . . . . . . . . . . . . . . . . . . . . . . **15**
            Class 3. **Secured Claims of KSJS** . . . . . . . . . . . . . . . . . . . . . . . . . . . **17**
            Class 4. **Priority Non-Tax Claims** . . . . . . . . . . . . . . . . . . . . . . . . . . **18**
            Class 5. **General Unsecured Claims** . . . . . . . . . . . . . . . . . . . . . . . . . **18**
            Class 6. **Interest Holders** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **18**

7. **PROVISIONS FOR EXECUTION OF THE PLAN** . . . . . . . . . . . . . . . . . . . . **19**

| | | |
|---|---|---|
| 7.1 | **Retention of Assets by the Estate** | 19 |
| 7.2 | **Funds** | 19 |
| 7.3 | **Surrender of Building Lot No. 76.** | 19 |
| 7.4 | **Surrender of Building Lots to Citizens** | 19 |
| 7.5 | **Disposition of Debtor's Assets** | 20 |
| 7.6 | **Documents** | 20 |
| 7.7 | **Disbursements and Investment of Funds** | 20 |
| 7.8 | **Final Decree** | 20 |
| 7.9 | **Winding Up Affairs** | 20 |
| 7.10 | **Corporate Action** | 20 |
| 7.11 | **Disbursing Agent** | 20 |
| 7.12 | **Exemption from Transfer Taxes** | 21 |
| 7.13 | **Final Tax Returns** | 21 |
| **8.** | **GENERAL PROVISIONS** | 21 |
| 8.1 | **Retention of Jurisdiction** | 21 |
| 8.2 | **Possible Tax Ramifications** | 21 |
| 8.3 | **Assumed Executory Contracts and Unexpired Leases** | 21 |
| 8.4 | **Rejected Executory Contracts and Unexpired Leases** | 22 |
| 8.5 | **Payments related to Assumption of Executory Contracts or Unexpired Leases.** | 22 |
| 8.6 | **Rejection Damages Bar Date** | 22 |
| 8.7 | **Powers** | 23 |
| 8.8 | **Objections to Claims; Prosecution of Disputed Claims** | 23 |
| 8.9 | **Late Filed Claims** | 23 |
| 8.10 | **No Distributions Pending Allowance** | 23 |
| 8.11 | **Reserve for Disputed Unsecured Claims** | 23 |
| 8.12 | **Estimation Period** | 23 |
| 8.13 | **Distributions After Allowance** | 24 |
| 8.14 | **Automatic Stay** | 24 |
| 8.15 | **Right to Revoke or Withdraw** | 24 |
| 8.16 | **Effect of Withdrawal, Revocation, or Non-Consummation** | 24 |
| 8.17 | **Liability in Connection with Plan** | 24 |
| **9.** | **OTHER INFORMATION** | 25 |

## 1.    **INTRODUCTION**

ALL LAND INVESTMENTS, LLC filed its voluntary petition under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code") on October 29, 2009 with the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"). Since the Petition Date, the Debtor has been operating as a Debtor-in-Possession.

Concurrent with the filing of this Amended Disclosure Statement, the Debtor (in such capacity, the "Plan Proponent") filed its proposed Amended Plan of Liquidation (as such amended plan may be further amended from time to time, the "Plan"). A copy of the Plan accompanies this Disclosure Statement. All capitalized terms not otherwise defined herein have the meanings ascribed to them in the Plan.

This Disclosure Statement summarizes what is in the Plan, and tells you certain information relating to the Plan and the process the Court follows in determining whether or not to confirm the Plan. This Disclosure Statement also describes certain alternatives to the Plan, and the manner in which distributions will be made under the Plan. In addition, this Disclosure Statement discusses the confirmation process and the voting procedures that holders of Claims and Interests must follow for their votes to be counted.

## 2.    **SUMMARY OF PLAN**

An overview of the Debtor's business, its pre-petition debt and events leading to the Chapter 11 filing can be found at Section 5 of this Disclosure Statement. The following is a brief summary of the Plan, which is qualified in its entirety by the reference to the Plan.

There are three Classes of Secured Claims, Class 1 Pre-Petition Real Estate Tax Claims and Other Secured Claims of Governmental Units, Class 2 Secured Claims of Citizens and Class 3 Secured Claims of KSJS. Class 1 is comprised of the Allowed Pre-Petition Real Estate Tax Claims and Other Secured Claims of the Governmental Units which constitute first priority Liens on the Building Lots. Class 1 Claims total, in the aggregate, approximately $4,962.42 as of September 30, 2009. Each Governmental Unit shall retain its Lien on each Building Lot to the extent of its Allowed Secured Claim in connection with each Building Lot. Each time a Building Lot is conveyed, the conveyance shall be subject to the respective Lien arising from the Class 1 Secured Claim in connection with said Building Lot, unless the applicable Governmental Unit is paid, in cash, at the time of the conveyance the amount of its Allowed Secured Class 1 Claim related to the Building Lot being conveyed.

Class 2, the Allowed Secured Claims of Citizens in the aggregate, total approximately $13,665,224.53 as of September 30, 2009 and are evidenced by two notes, the Phases 1 and 2 Note which has a principal balance due of $2,998,966.50 as of September 30, 2009 (as detailed in Section 3.2.1(a) of the Plan) and the Phases 3 to 8 Note which has a principal balance due of $10,666,258.03 as of September 30, 2009 (as detailed in Section 3.2.1(b) of the Plan). The Phases 1 and 2 Note is secured by the Citizens Collateral and the Citizens Non-Debtor Collateral. The Phases 3 to 8 Note is secured only by the Citizens Collateral. The Citizens Collateral consists of all the Building Lots except for Building Lot No. 76. The Citizens Non-Debtor Collateral consists of a collateral

mortgage given to Citizens and recorded against 32 building lots owned by a non-debtor affiliated entity, Huntington Development, LLC. The Citizens Non-Debtor Collateral only secures the Debtor's obligations under the Phases 1 and 2 Note, not the Phases 3 to 8 Note. The Allowed Secured Claim of Citizens in connection with both the Phases 1 and 2 Note and the Phases 3 to 8 Note shall be paid by the Debtor providing Citizens the option of either: (i) the Debtor surrendering the Citizens Collateral to Citizens by the delivery of a deed on the Effective Date, in recordable form, from the Debtor as grantor, to Citizens or its nominee, as grantee, that provides for the conveyance of the Citizens Collateral or (ii) the Debtor authorizing Citizens to foreclose on the Citizens Collateral on the Effective Date. Citizens must make its selection within fifteen (15) days of confirmation; otherwise, the Debtor shall surrender the Citizens Collateral to Citizens by delivery of a deed under the first option. The value of the Citizens Collateral will be determined at the Confirmation Hearing by the Court. The value of the Citizens Collateral will be credited against the Class 2 Claims. In the event that the Court determines that the conveyance of the Citizens Collateral to Citizens does not satisfy the Class 2 Claims in full, the value of the Citizens Collateral, as determined by the Court, shall be credited against the Class 2 Claims and Citizens shall retain its rights and remedies for the balance due, after such credit, against the Debtor, and all non-debtor sureties and guarantors. If the value of the Citizens Collateral conveyed to Citizens as determined by the Court exceeds the Citizens debt, Citizens will retain the excess and Citizens' Class 2 Claim will be paid in full and it will have no further claim against the Debtor.

Class 3 is comprised of the Allowed Secured Claims of KSJS which is secured by the KSJS Collateral. The KSJS Collateral consists of Building Lot No. 76. Class 3 Claims total approximately $119,514 as of January 1, 2010. The Class 3 Claims shall be satisfied in full by the Debtor conveying on the Effective Date to KSJS or its nominee all its right, title, and interest in the KSJS Collateral in full and final satisfaction of the Allowed Secured Claims of KSJS. The Debtor asserts that the value of KSJS Collateral equals or exceeds the amount of the Allowed Claim of KSJS and therefore, the surrender to KSJS of the KSJS Collateral represents satisfaction in full of the KSJS Allowed Claim. The value of the KSJS Collateral will be determined at the Confirmation Hearing by the Court. The value of the KSJS Collateral will be credited against the Class 3 Claims. In the event that the Court determines that the conveyance of the KSJS Collateral to KSJS does not satisfy the Class 3 Claims in full, the value of the KSJS Collateral, as determined by the Court, shall be credited against the Class 3 Claims and KSJS shall retain its rights and remedies for the balance due, after such credit, against the Debtor, and all non-debtor sureties and guarantors. If the value of the KSJS Collateral conveyed to KSJS as determined by the Court exceeds the KSJS debt, KSJS will retain the excess and KSJS' Class 3 Claim will be paid in full and it will have no further claim against the Debtor.

As of the Petition Date, Class 4 Priority Non-Tax Claims consisted of the contingent Claims held by contract purchasers for Building Lots Nos. 75 and 98 in the amount of $21,123. As of the date of this Disclosure Statement, the contingent Class 4 Claims have been satisfied by the Debtor crediting the deposit paid by each contract purchaser on account of the sale price at the closing on the homes located on Building Lot Nos. 75 and 98. Holders of Allowed Administrative Claims are unclassified under the Plan and will be paid in accordance with the provisions of Section 4.1 of the Plan. Holders of Allowed Priority Tax Claims are unclassified under the Plan and will be paid in

accordance with the provisions of Sections 4.2 and 4.3 of the Plan. The DIP Facility will be paid in accordance with the provisions of Section 4.4 of the Plan. Lawrence A. Zeccola and Frank W. Zeccola shall fund on or before the Effective Date, any funds needed to satisfy the Allowed Fee Claims and Allowed Priority Tax Claims incurred through and including the Effective Date.

The Plan provides that holders of Allowed General Unsecured Claims (Class 5) shall be receive a Pro-Rata distribution on account of such Allowed Claim from funds remaining, if any, after the payment of all Class 1 Claims, Class 2 Claims, Class 3 Claims, Class 4 Claims, Allowed Administrative Claims, Allowed Priority Non-Tax Claims and Allowed Priority Tax Claims. In addition to the above, holders of Allowed Class 5 Claims (excluding all claims held by Lawrence A. Zeccola, Frank W. Zeccola, Zeccola Builders, Inc. and FLZ Development, LLC) will receive, on a Pro-Rata basis, the amount of $18,000 from funds to be advanced by Lawrence A. Zeccola and Frank W. Zeccola on the Effective Date of the Plan.

Lawrence A. Zeccola, Frank W. Zeccola, Zeccola Builders, Inc. and FLZ Development, LLC, have agreed to waive their right to share in the distribution provided under Class 5 of the Plan on account of their Allowed General Unsecured Claims that total $8,503,223.83; provided, however, they have retained their voting rights in connection with these claims. For a further explanation of the claims held by Lawrence A. Zeccola, Frank W. Zeccola, Zeccola Builders, Inc. and FLZ Development, LLC, see Section 5.6 of this Disclosure Statement titled Claims held by Affiliates and Insiders.

The scheduled Allowed General Unsecured Claims total $8,644,700.93. As a result of the decision of Lawrence A. Zeccola, Frank W. Zeccola, Zeccola Builders, Inc. and FLZ Development, LLC, to waive their right to share in the distribution under Class 5 of the Plan, the net estimated amount of claims that will share in the distribution under Class 5 are reduced to $141,477.10. Based on the distribution under Class 5 of $18,000, being funded by Lawrence and Frank Zeccola, the Debtor estimates that Allowed General Unsecured Claims will receive a dividend of 12.7% of their Allowed General Unsecured Claim within thirty days of the Effective Date.

Class 6 Interests in the Debtor shall be cancelled and extinguished as of the Effective Date, and holders of such Interests shall not be entitled to, and shall not receive or retain any property or interest in property under the Plan on account of such Interests.

**THE DEBTOR RECOMMENDS A VOTE FOR ACCEPTANCE OF THEIR PLAN.**

3. **DISCLAIMERS**

    **3.1** This Disclosure Statement may not be relied on for any purpose other than to determine how to vote on the Plan, and nothing contained in it shall constitute an admission of any fact or liability by any party, or be admissible in any proceeding involving the plan or other legal effects of the reorganization on creditors, holders of claims, or the Debtor.

    **3.2** The statements contained in this Disclosure Statement are made as of the date of the Order approving this Disclosure Statement unless another time is specified herein, and neither

delivery of this Disclosure Statement nor any exchange of rights made in connection with this Disclosure Statement shall, under any circumstances, create an implication that there has been no change in the facts set forth herein since the date the Disclosure Statement was compiled.

**3.3** The statements and representations contained herein are made solely by or at the instance of the Debtor and no other party in interest is responsible for the accuracy or adequacy of the information contained herein.

**3.4** No representations concerning the Plan are authorized by the Debtor other than as set forth in this Disclosure Statement. The Debtor does not warrant or represent that the information contained herein is without any inaccuracy.

**3.5** The presentation of the information set forth herein does not constitute factual or legal admissions by the Debtor. Certain of the information, by its nature, is forward looking, contains estimates and assumptions which may prove to be false or inaccurate and contains projections which may be materially different from actual future experiences. Such estimates and assumptions are made for informational purposes only and no representation or warranty is made with respect thereto.

**3.6** Any estimates of claims or interests set forth in this Disclosure Statement may vary materially from the final amounts of claims or interests allowed by the Bankruptcy Court.

**3.7** This Disclosure Statement will not be admissible in any other proceeding involving the Debtor, the Estate, or any other party, except in connection with its approval and the confirmation process for the Plan.

## 4. <u>INFORMATION ABOUT THE REORGANIZATION PROCESS</u>

**4.1** **<u>Brief Explanation of Chapter 11</u>**. Chapter 11 is the principal business reorganization section of the Bankruptcy Code. Pursuant to Chapter 11, normally a debtor is permitted to reorganize its business affairs for its own benefit and that of its creditors and other interest holders. Unless a trustee is appointed, the debtor is authorized to continue to operate its business while all attempts to collect pre-petition claims from the debtor, or to foreclose upon property of the debtor, are stayed during the pendency of the case, unless otherwise ordered by the Bankruptcy Court.

The objective of a Chapter 11 case is the formulation of a plan of reorganization or liquidation of the debtor and its affairs. The Plan is a vehicle for resolving claims against the debtor, as well as providing for its future direction and operations. Impaired creditors are given an opportunity to vote on any proposed plan, and the plan must be confirmed by the Bankruptcy Court to be valid and binding on all parties. Once the plan is confirmed, all claims against the debtor which arose before the confirmation of the Plan are extinguished, unless specifically preserved in the Plan. However, if the proposed Plan provides for the liquidation of the debtor's assets then, no discharge is granted to the debtor from any debt and liability that arose prior to the Petition Date.

4

**4.2   Purpose of Disclosure Statement**.  The purpose of a Disclosure Statement is to provide the creditors and equity holders with sufficient information about the Debtor and the proposed Plan of Reorganization so as to permit them to make an informed judgment when voting on the Plan.  This Disclosure Statement therefore includes background information about the Debtor and also identifies the classes into which creditors have been placed by the Plan.  The Disclosure Statement describes the proposed treatment of each of those classes if the Plan is confirmed.  In addition, the Disclosure Statement contains information concerning the future prospects for the Debtor in the event of confirmation or, in the alternative, the prospects if confirmation is denied or the proposed Plan does not become effective.

This Disclosure Statement and the Exhibits described herein have been approved by Order of the Bankruptcy Court dated _____, as containing, in accordance with the provisions of the Bankruptcy Code, adequate information of a kind and in sufficient detail that would enable a reasonable, hypothetical investor, typical of a holder of impaired claims or interests that is entitled to vote on the Plan, to make an informed judgment with respect to the acceptance or rejection of the Plan.  The Bankruptcy Court's approval of this Disclosure Statement, however, does not constitute a recommendation by the Bankruptcy Court either for or against the Plan.

**YOU ARE URGED TO STUDY THE PLAN IN FULL AND TO CONSULT WITH YOUR COUNSEL AND OTHER ADVISORS ABOUT THE PLAN AND ITS IMPACT, INCLUDING POSSIBLE TAX CONSEQUENCES, UPON YOUR LEGAL RIGHTS. PLEASE READ THIS DISCLOSURE STATEMENT CAREFULLY BEFORE VOTING ON THE PLAN.**

**4.3   Notice to Holders of Claims and Interests**.  This Disclosure Statement is being transmitted to certain holders of Claims for the purpose of soliciting votes on the Plan and to others for information purposes.  The purpose of this Disclosure Statement is to provide adequate information to enable the holder of a Claim against the Debtors to make a reasonably informed decision with respect to the Plan prior to exercising the right to vote to accept or reject the Plan.

**4.4   Solicitation Package**.  Accompanying this Disclosure Statement are, among other things, copies of the (a) the Plan, (b) the order approving the Disclosure Statement, which inter alia, provides notice of the time for submitting Ballots to accept or reject the Plan, the date, time and place of the hearing to consider the confirmation of the Plan and related matters, and the time for filing objections to the confirmation of the Plan, and (c) one or more ballots (and a return envelope), to be used by you, if you are entitled to vote, in voting to accept or reject the Plan.

**4.5   Eligibility to Vote**.  Pursuant to the provisions of the Bankruptcy Code, only classes of claims or interests that are "impaired" under a plan may vote to accept or reject such plan. Generally, a claim or interest is impaired under a plan if the holder's legal, equitable or contractual rights are changed under such plan.  In addition, if the holders of claims or interests in an impaired class do not receive or retain any property under a plan on account of such claims or interests, such impaired class is deemed to have rejected the Plan under section 1126(g) of the Bankruptcy Code and therefore such holders do not need to vote on the Plan.

4.5.1    <u>Unimpaired Classes Deemed to Accept the Plan</u>.  Class 4 Claims are unimpaired.  Pursuant to § 1126(f) of the Bankruptcy Code, Class 4 Claims are conclusively presumed to have accepted the Plan, and the votes of holders of Class 4 Claims therefore will not be solicited.  If and to the extent that Class 4 Claims identified as Unimpaired are determined to be Impaired, such Class 4 Claims will be entitled to vote to accept or reject the Plan.

4.5.2    <u>Impaired Classes of Claims Entitled to Vote</u>.  Under the Plan, holders of Claims in Class 1, Class 2, Class 3, Class 5 and Class 6 are Impaired and are entitled to vote to accept or reject the Plan.

4.5.3    <u>Claims Subject to a Pending Objection are not Entitled to Vote</u>.  Creditors whose claims are subject to a pending objection are not eligible to vote unless such objections are resolved in their favor or, after notice and a hearing pursuant to Bankruptcy Rule 3018(a), the Bankruptcy Court allows the Claim temporarily or estimates the amount of the Claim for the purpose of voting to accept or reject the Plan.  Any creditor that wants its claim to be allowed temporarily or estimated for the purpose of voting must take the steps necessary to arrange for a hearing with the Bankruptcy Court under Bankruptcy Rule 3018(a) prior to the deadline established for voting for the Plan.

**THE BANKRUPTCY COURT HAS FIXED NO LATER THAN 5:00 P.M. (PREVAILING EASTERN TIME) ON _____ AS THE LAST DATE BY WHICH ALL BALLOTS MUST BE RECEIVED.**  All parties eligible to vote on the Plan are urged to complete and return their Ballots promptly to avoid delay in confirmation of the Plan.

**4.6**    <u>**General Voting Procedures and Voting Deadline**</u>.  After carefully reviewing the Plan, this Disclosure Statement, and (if you are entitled to vote) the detailed instructions accompanying your Ballot, please indicate your acceptance or rejection of the Plan by checking the appropriate box on the enclosed Ballot.  Please complete and sign your original Ballot and return in the envelope provided or by facsimile.  You must provide all of the information requested by the appropriate Ballot.  Failure to do so may result in the disqualification of your vote on such Ballot.

**IN ORDER FOR YOUR VOTE TO BE COUNTED, YOUR BALLOT MUST BE PROPERLY COMPLETED AS SET FORTH ABOVE AND IN ACCORDANCE WITH THE VOTING INSTRUCTIONS ON THE BALLOT AND ACTUALLY RECEIVED NO LATER THAN _____ AT 5:00 P.M. (PREVAILING EASTERN TIME) BY**

**ARIS J. KARALIS, ESQUIRE**
**MASCHMEYER KARALIS P.C.**
**1900 SPRUCE STREET**
**PHILADELPHIA, PA 19103**
**(215) 546-4500**
**TELEFAX NO. (215) 985-4175**

**BALLOTS RECEIVED AFTER SUCH TIME WILL NOT BE COUNTED UNLESS THE COURT SO ORDERS. THE DEBTOR RECOMMENDS A VOTE "FOR ACCEPTANCE" OF THE PLAN.**

**4.7** **The Confirmation Hearing**. The Bankruptcy Court has scheduled a hearing on the confirmation of the Plan to commence on _____, at _____ __.m., or as soon thereafter as the parties can be heard. The confirmation Hearing will be held at 824 North Market Street, Courtroom No. _____, Wilmington, DE 19801. At the hearing, the Bankruptcy Court will consider whether the Plan satisfies the various requirements of the Bankruptcy Code, including whether it is feasible and whether it is in the best interest of holders of claims and interests. The Bankruptcy Court will also receive and consider a report of plan voting prepared by the Debtor concerning the votes for acceptance or rejection of the Plan cast by the parties entitled to vote. The hearing may be adjourned from time to time by the Court without further notice except for the announcement of the adjournment date made at the hearing or at any subsequently adjourned hearing. The Court has directed that objections, if any, to confirmation of the Plan be filed with the Clerk of the Court and served so that they are actually received on or before _____ **at** _____ __.m. (prevailing Eastern time) by the Debtor's counsel and the Office of the United States Trustee.

**4.8** **Acceptances Necessary to Confirm Plan**. At the scheduled confirmation hearing, the Bankruptcy Court must determine, among other things, whether the Plan has been accepted by each impaired class. Under Section 1126 of the Bankruptcy Code, an impaired class is deemed to have accepted the Plan if at least 2/3 in amount and more than ½ in number of the Allowed Claims of class members who have voted to accept or reject the Plan have voted for acceptance of the Plan. Further, unless there is acceptance of the Plan by all members of an impaired class, the Bankruptcy Court must also determine that under the Plan class members will receive property of a value, as of the Effective Date of the Plan, that is not less than the amount that such class members would receive or retain if the Debtor was liquidated under chapter 7 of the Bankruptcy Code on the Effective Date of the Plan.

**4.9** **Confirmation of The Plan Without The Necessary Acceptances**. If any Impaired Class fails to accept the Plan, the Plan Proponent intends to request that the Bankruptcy Court confirm the Plan as a "Cramdown" pursuant to § 1129(b) of the Bankruptcy Code with respect to such Class. Section 1129(b)of the Bankruptcy Code provides that the Plan can be confirmed even if the plan is not accepted by all impaired classes, as long as at least one impaired class of claims has accepted it. The Bankruptcy Court may confirm the Plan at the request of the Debtors if the Plan "does not discriminate unfairly" and is "fair and equitable" as to each impaired class that has not accepted the Plan. The Plan does not discriminate unfairly within the meaning of the Bankruptcy Code if a dissenting class is treated equally with respect to the other classes of equal rank.

A Plan is fair and equitable as to a class of secured claims that rejects a Plan if the Plan provides (a) (i) that holders of claims included in the rejecting class retain the liens securing those claims whether the property subject to those liens is retained by the debtor or transferred to another entity, to the extent of the allowed amount of such claims; and (ii) that each holder of a claim of such class receives on account of that claim deferred cash payments totaling at least the allowed

amount of that claim, of a value, as of the effective date of the plan, of at least the value of the holders' interest in the estate's interest in such property; (b) for the sale, subject to Section 363(k) of the Bankruptcy Code, of any property that is subject to the liens securing the claims included in the rejecting class, free and clear of liens, with the liens to attach to the proceeds of the sale, and the treatment of the liens on proceeds under clause (a) or (b) of this subparagraph; or (c) for the realization by such holders of the indubitable equivalent of such claims.

A plan is fair and equitable as to a class of unsecured claims that rejects a plan if the plan provides (a) for each holder of a claim included in the rejecting class to receive or retain on account of that claim property that has a value, as of the effective date of the plan, equal to the allowed amount of such claim or (b) that the holder of any claim or interest that is junior to the claims of such class will not receive or retain an account of such junior claim or interest any property at all.

A plan is fair and equitable as to a class of equity interests that rejects a plan if the plan provides (a) that each holder of an interest included in the rejecting class receive or retain on account of that interest property that has a value, as of the effective date of the plan, equal to the greatest of the allowed amount of any fixed liquidation preference to which such holder is entitled, and fixed redemption price to which such holder is entitled, or the value of such interest, or (b) that the holder of any interest that is junior to the interest of such class will not receive or retain under the plan on account of such junior interest any property at all.

**4.10    Best Interest of Creditors**.  Each holder of a Claim or Interest in an Impaired Class must either (i) accept the Plan or (ii) receive or retain under the Plan cash or property of a value, as of the Effective Date of the Plan, that is not less than the value such holder would receive or retain if the Debtor was liquidated under Chapter 7 of the Bankruptcy Code.  The Bankruptcy Court will determine whether the cash and property issued under the Plan to each Class equals or exceeds the value that would be allocated to the holders in a liquidation under Chapter 7 of the Bankruptcy Code. The Plan Proponent believes that the holders of Claims against and Interests in the Debtor will have an equal or greater recovery as a result of the liquidation of the Debtor's Assets by the Plan as discussed herein than could be realized in a Chapter 7 liquidation.

To determine the value that a holder of a Claim or Interest in an Impaired Class would receive if the Debtor was liquidated under Chapter 7, the Bankruptcy Court must determine the aggregate dollar amount that would be generated from the liquidation of the Debtor's Assets if the Debtor's Chapter 11 Case had been converted to a Chapter 7 liquidation case and the Debtor's Assets were liquidated by a Chapter 7 trustee (the "Liquidation Value").  The Liquidation Value would consist of the net proceeds from the distribution of the Debtor's Assets, augmented by cash held by the Debtor and reduced by certain increased costs and Claims that arise in a Chapter 7 liquidation case that do not arise in a Chapter 11 case.

As explained below, the Liquidation Value available for satisfaction of Claims and Interests in the Debtor would be reduced by: (a) the costs, fees and expenses of the liquidation under Chapter 7, which would include disposition expenses and the compensation of one or more trustees and their counsel and other retained professionals, (b) the fees of the Chapter 7 trustee and (c) certain

other costs arising from conversion of the Chapter 11 Case to Chapter 7. A hypothetical chapter 7 liquidation analysis prepared by the Plan Proponent (the "Liquidation Analysis") is attached to this Disclosure Statement as Amended Exhibit 4.10.

As is evident from the Liquidation Analysis, the Plan Proponent believes that many Creditors will clearly benefit from the Debtor's reorganization under Chapter 11 of the Bankruptcy Code. The Debtor believes that it will realize a greater return for Creditors under the Plan than a Chapter 7 trustee will realized under a Chapter 7.

Moreover, under the Plan the Debtor will avoid the increased costs and expenses of a Chapter 7 liquidation, including the fees payable to the Chapter 7 trustee and her/his professionals. Any cash to be distributed to Creditors would be reduced by the statutory fees payable to the Chapter 7 trustee, which is calculated on a sliding scale from which the maximum compensation is determined based on the total amount of moneys disbursed or turned over by the Chapter 7 trustee. Professionals of the Chapter 7 trustee, including legal counsel and accountants, would add substantial administrative expenses that would be entitled to be paid ahead of Allowed Claims against the Debtor. Moreover, the Chapter 7 trustee fees would reduce the Assets available for distribution to the Estate's Creditors.

It is also anticipated that a Chapter 7 liquidation would result in a significant delay in payments being made to Creditors. Bankruptcy Rule 3002(c) provides that conversion of the Chapter 11 Case to Chapter 7 will trigger a new bar date for filing claims against the Estate, and that the new bar date will be more than 90 days after the Chapter 11 Case converts. Not only would a Chapter 7 liquidation delay the distribution to Creditors, but it is possible that additional Claims that were not asserted in the Chapter 11 Case, or were late-filed, could be filed against the Estate. Further, the Chapter 7 trustee will not make any distribution to Chapter 11 Creditors until such time as the Chapter 7 trustee has completed her/his administration of the Estate and has obtained Court approval of her/his final accounting. On the average the Chapter 7 administration from beginning to end could take more than a year to complete.

For the reasons set forth above, the Plan Proponent believes that the Plan provides a superior recovery for the Holders of Claims (or at least as much as they would recover through a Chapter 7 liquidation but on a much faster track), and the Plan meets the requirements of the best interest of Creditors.

## 5. GENERAL INFORMATION

**5.1 Overview of the Debtor's Business**. The Debtor is a Delaware limited liability company that was formed in November 2004 for the specific purpose of purchasing the real property that is known as the Old Country Farm Subdivision and located in Kent County, Clayton, DE 19938. The original purchase price was $17,988,871.97. The purchase price was later refinanced by Citizens Bank, N.A. Old Country Farm is a Single Family Home Subdivision with the following phases and original number of building lots: (1) Phase 1- Off Site Work, (2) Phase 2- 71 Building Lots, (3) Phase 3- 66 Building Lots, (4) Phase 4- 60 Building Lots, (5) Phase 5- 34 Building Lots, (6) Phase 6- 58 Building Lots, (7) Phase 7- 50 Building Lots, and (8) Phase 8- 73 Building Lots. A complete list of each Building Lot No., Phase No., address, Tax Parcel No. and Status (e.g. Improved

or Unimproved) can be found under Section 1.14 of the Plan titled "Building Lot" or "Building Lots".

Prior to the Petition Date, the Debtor closed on seventeen (17) homes located in Old Country Farm. The Debtor registered revenue from the sale of homes constructed on the Building Lots in the gross amount of $1,030,000 in 2007, $470,000 in 2008 and $148,000 in 2009 as of the Petition Date. The Debtor currently owns 56 approved/improved lots located in Phase 2, 7 approved and improved lots located in Phase 3, 330 approved but unimproved lots located in Phases 3 through 8, and various open space. A listing of the current real property owned by the Debtor is attached as Exhibit 5.1. After the Petition Date and pursuant to a Court Order, Building Lot Nos. 75 and 98 were sold in accordance with purchase and sale agreements with third party contract purchasers for new homes. Building Lot No. 76 is a partially completed spec home that is available for sale.

As of the Petition Date, the Debtor asserts that the fair market value of the Building Lots exceeds $19,000,000. This valuation was based on an appraisal prepared for Continental Bank prior to the Petition Date. The Debtor is currently in the process of retaining an appraiser to appraise the Building Lots as of the Confirmation Hearing.

The Debtor has the following members, officers and directors: (1) Lawrence Zeccola, Sr.- President/Director/Managing Member with 400 Units, (2) Frank W. Zeccola- Vice President/Director/Member with 400 Units, (3) Lawrence A. Zeccola, Jr.- Secretary/Director/Member with 100 Units, (4) Anthony D. Zeccola- Treasurer/Director/Member with 100 Units and (5) Robert Cook, controller who owns no units.

**5.2     The Debtor's Pre-Petition Debt.** The Class 1 Claims held by the Governmental Units total approximately $4,962.42 as of September 30, 2009. The Class 2 Claims held by Citizens total in the aggregate approximately $13,665,224.53 (Phases 1 and 2 Note $2,998,966.50 and Phases 3 to 8 Note $10,666,258.03) as of September 30, 2009. The Class 3 Claims held by KSJS totaled approximately $455,677.64 as of October 19, 2009. However, the Class 3 Claims have been reduced post-Petition Date in accordance with the DIP Loan. As such, the balance of the Class 3 Claims total approximately $119,514 as of January 1, 2010. The Class 4 Priority Non-Tax Claims were contingent Claims held by contract purchasers in the amount of $21,123 as of the Petition Date that have been satisfied post-petition. The Class 5 Claims of General Unsecured Creditors total $8,644,700.93 as of the Petition Date.

**5.3     Events Leading to Chapter 11 Filing**. The Debtor experienced a significant working capital shortage resulting primarily from the slowing housing industry which caused a loss of liquidity, resulting in subcontractors failing to continue to work, lenders ceasing the funding of construction draws and delays in the field, which delayed closings. As a result of these severe liquidity problems, the Debtor encountered significant challenges in servicing its secured debt and timely paying its vendors. Citizens confessed judgment against the Debtor. The Debtor decided to file for Chapter 11 protection to preserve its going concern value and to reorganize.

**5.4     Continuation of Business; Stay of Litigation**. On the Petition Date, the Debtor filed a Voluntary Petition under Chapter 11 with the Bankruptcy Court in the District of Delaware. Since the Petition Date, the Debtor has continued to operate as debtor-in-possession subject to the

supervision of the Court in accordance with the provisions of the Bankruptcy Code. While the Debtor is authorized to operate in the ordinary course of business, transactions out of the ordinary course of business require Court approval. In addition, the Court has supervised the Debtor's retention of attorneys, accountants, financial advisors and other professionals as required by the Bankruptcy Code. An immediate effect of the filing of the Debtor's bankruptcy petition was the imposition of the automatic stay under Section 362(a) of the Bankruptcy Code which, with limited exceptions, enjoined the commencement or continuation of all collection efforts by creditors, the enforcement of liens against property of the Debtor and the continuation of litigation against the Debtor and the affiliated debtors. This relief provided the Debtor with the "breathing room" necessary to assess and reorganize its business. The automatic stay remains in effect, unless modified by the Court or applicable law, until the Effective Date of the Plan.

### 5.5    Significant Events During the Bankruptcy Proceeding.

5.5.1    Retention of Professionals. On the Petition Date, the Debtor filed applications to retain: (a) Maschmeyer Karalis P.C. ("MK") as lead bankruptcy counsel; (b) Rawle & Henderson LLP ("RH") as local bankruptcy counsel; (c) ReMax Associates ("ReMax") as real estate broker; and (d) Creative Choice Realty ("CCR") as real estate co-broker. The Debtor's retention of ReMax and CCR was approved pursuant to Court Orders dated November 5, 2009 [Docket Nos. 37 and 38]. The Debtor's retention of MK and RH was approved pursuant to Court Orders dated December 2, 2009 [Docket Nos. 55 and 56].

5.5.2    DIP Facility. On or about the Petition Date, the Debtor filed a Motion for approval of the DIP Credit Agreement in order to complete the construction of homes on Building Lots Nos. 75, 76 and 98. Pursuant to an Interim Order dated November 4, 2009 [Docket No. 31], the DIP Credit Agreement was approved on an interim basis. Pursuant to an Final Order dated December 2, 2009 [Docket No. 60], the DIP Credit Agreement was approved on a final basis.

5.5.3    Sale of Homes and Assumption of Purchase Contracts. On the Petition Date, the Debtor filed a Motion for authority to sell homes under the purchase and sale contracts for Building Lot Nos. 75 and 98 and to assume the underlying purchase contracts with the third party contract purchasers. Pursuant to an Order dated November 5, 2009 [Docket No. 36], the sale of these homes was approved and the closings subsequently occurred.

5.5.4    Schedules, Statement of Financial Affairs and Matrix. On the Petition Date, the Debtor filed its Schedules of Assets and Liabilities, Statement of Financial Affairs and Matrix.

5.5.5    Plan and Disclosure Statement. On the Petition Date, the Debtor filed its Plan of Liquidation and Disclosure Statement with Respect to the Plan.

5.5.6    Motion to Approve Disclosure Statement. On the Petition Date, the Debtor filed a Motion to Approve the Disclosure Statement with Respect to the Plan.

5.5.7    Claims Bar Date. In order to more fully understand the nature and extent of the liabilities of the estate, the Debtor requested that the Bankruptcy Court establish a claims bar

date. The Bankruptcy Court established January 15, 2010 as the General Bar Date and April 27, 2010 as the Governmental Unit Bar Date.

5.5.8 <u>Mechanic's Lien Complaint</u>. On January 14, 2010, Crouse Brothers, Inc. filed a Complaint and Statement of Claim for Mechanic's Lien as well as the Notice pursuant to 11 U.S.C. § 546(b).

**5.6** **<u>Claims Held By Affiliates and Insiders</u>**. The Debtor has scheduled Claims held by Affiliates and Insiders on its Bankruptcy Schedules as Allowed General Unsecured Claims, as follows:

| **<u>Affiliates & Insiders</u>** | **<u>Consideration</u>** | **<u>Amount</u>** |
|---|---|---|
| FLZ Development, LLC | Loans | $189,200.00 |
| Huntington Development, LLC | Guaranty of obligations Owed to Citizens (Contingent & Unliquidated) | Unknown |
| Zeccola Builders, Inc. | Loans | $25,039 |
| Frank W. Zeccola | Loan used for acquisition of Old Country Farm | $4,172,933.88 |
| Frank W. Zeccola | Guaranty of obligations Owed to Citizens (Contingent & Unliquidated) | Unknown |
| Lawrence A. Zeccola | Loan used for acquisition of Old Country Farm | $4,116,050.95 |
| Lawrence A. Zeccola | Guaranty of obligations Owed to Citizens (Contingent & Unliquidated) | Unknown |

**5.7** **<u>Avoidance Actions.</u>** The Debtor has conducted an investigation with respect to the existence of ~~preference a~~Avoidance Actions <u>under 11 U.S.C. §§ 544, 545, 547, 548, 549, 550 and 553</u> and believes that there are no sustainable ~~preference a~~Avoidance Actions. <s>.</s>

<u>5.7.1</u> In the ninety (90) days prior to the Petition Date, ~~Davis, Bowen & Fridel, Inc. received the sum of $150.00. FLZ~~<u>the following creditors received aggregate payments from the Debtor in excess of $5,475.00:</u>

| <u>PAYEE</u> | <u>DATE</u> | <u>AMOUNT</u> | <u>REASON</u> |
|---|---|---|---|

| | | | | |
|---|---|---|---|---|
| 1. | Zeccola Builders | 8/3/09 | $5,000 | Payment received for work performed on houses on Lot Nos. 75, 76 and 98 (this payment was made from funds advanced by KSJS pursuant to its pre-Petition Date loan to the Debtor) |
| 2. | Zeccola Builders | 8/31/09 | $75,000 | Payment received for work performed on houses on Lot Nos. 75, 76 and 98 (this payment was made from funds advanced by KSJS pursuant to its pre-Petition Date loan to the Debtor) |
| 3. | Zeccola Builders | 9/9/09 | $16,797 | Payment received for work performed on houses on Lot Nos. 75, 76 and 98 (this payment was made from funds advanced by KSJS pursuant to its pre-Petition Date loan to the Debtor) |

5.7.2 Between ninety (90) days and one year prior to the Petition Date, the following "insider" creditors received aggregate payments from the Debtor in excess of $5,475.00:

| | PAYEE | DATE | AMOUNT | REASON |
|---|---|---|---|---|
| 1. | Zeccola Builders | 5/13/09 | $160,000 | Payment received at closing on house on Lot. No. 34 for work performed on this house |
| 2. | Zeccola Builders | 7/7/09 | $75,000 | Payment received at closing on house on Lot. No. 30 for work performed on this house |
| 3. | FLZ Development | 7/14/09 | $8,800 | Partial repayment of pre-Petition Date loan |

5.7.3 Between one year and two (2) years prior to the Petition Date, the following "insider" creditors received payments from the Debtor:

| | PAYEE | DATE | AMOUNT | REASON |
|---|---|---|---|---|
| 1. | FLZ Development | 12/4/07 | $10,000 | Partial repayment of pre-Petition Date loan |
| 2. | FLZ Development | 12/12/07 | $10,000 | Partial repayment of pre-Petition Date loan |

| 3. | Zeccola Builders | 12/12/07 | $70,000 | Repayment of pre-Petition Date loan |

During this two year period, payments were also made to other creditors. No payments were made during this two year period to Huntington ~~Development, LLC received the sum of $2,000.00, and Zeccola Buiders, Inc. received the sum of $96,797.00. These payments were all made in accordance with ordinary business terms.~~ Lawrence A. Zeccola, Sr., Lawrence A. Zeccola, Jr., Frank W. Zeccola or Anthony Zeccola.

## 6.    THE PLAN

The following is a summary of the significant provisions of the Plan and is qualified in its entirety by the provisions of the Plan, a copy of which accompanies this Disclosure Statement. In the event and to the extent that the description of the Plan contained in this Disclosure Statement is inconsistent with any provision of the Plan, the provisions of the Plan shall control and take precedence. All creditors are urged to carefully read the Plan.

**6.1                      Classes of Claims and Interests**.    The categories of Claims and Interests listed below classify Claims (except for Administrative Claims and Priority Tax Claims) and Interests for all purposes, including voting, confirmation and distribution, pursuant to the Plan. As provided in §1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims shall not be classified for the purposes of voting or receiving distributions under the Plan. Rather, all such Claims shall be treated separately as unclassified Claims on the terms set forth in Article 4 of the Plan. Consistent with §1122 of the Bankruptcy Code, a Claim or Interest is classified by the Plan in a particular Class only to the extent the Claim or Interest is within the description of the Class, and a Claim or Interest is classified in a different Class to the extent it is within the description of that different Class.

**6.2                      Unclassified Claims**

6.2.1                      Administrative Expenses. Administrative Claims are Claims for any costs or expense of the Chapter 11 case allowed under Sections 503(b) and 507(a)(1) of the Bankruptcy Code, including all actual and necessary costs and expenses relating to the preservation of the Debtor's Estate or the operation of the Debtor's business, and all compensation and reimbursement of expenses to the extent allowed by the Bankruptcy Code and approved by the Court. To become entitled to payment under the Plan, the holder of an administrative claim must comply with the requirements of Section 4.1 of the Plan, including specifically the requirement that a proper motion or request for payment of the claim be filed within thirty (30) days after the Confirmation Date (unless the claim is a Fee Claim or a claim for a liability incurred and paid in the ordinary course of business by the Debtor).

6.2.2                      Fee Claims Incurred as of Effective Date. Each professional person who holds or asserts an Administrative Claim that is a Fee Claim for services performed and expenses incurred on or after the Petition Date and on or before the Effective Date, must file with the Bankruptcy Court a fee application within sixty (60) days after the Effective Date.

A Fee Claim with respect to which a fee application has been properly filed shall become an Allowed Administrative Claim only to the extent allowed by a Final Order. Lawrence A. Zeccola and Frank W. Zeccola shall fund on or before the Effective Date, any funds needed to satisfy the Allowed Administrative Claims that are Fee Claims incurred as of the Effective Date.

6.2.3    **Payment of Allowed Administrative Claim.** Each holder of an Allowed Administrative Claim shall receive (i) the amount of such holder's Allowed Claim upon the Effective Date, (ii) such other treatment as may be agreed upon in writing by the Debtor and such holder as long as no payment is made thereon prior to the Effective Date, or (iii) as may be otherwise ordered by the Court, provided that an Administrative Claim representing a liability incurred in the ordinary course of business by the Debtor may be paid in the ordinary course of business.

6.2.4    **Professional Fees Incurred After the Effective Date**. Any professional fees incurred by the Debtor after the Effective Date must be approved by the Debtor and, thereafter, may be paid. Any dispute which may arise with regard to professional fees after the Effective Date shall be submitted to the Bankruptcy Court, which shall retain jurisdiction to settle these types of disputes. In the event of such dispute, the Debtor shall pay the portion of the fees, if any, which is not in dispute, punctually.

6.2.5    **Priority Tax Claims.** Priority Tax Claims are Claims against the Debtor that are entitled to priority in accordance with Section 507(a)(7) of the Bankruptcy Code. These Claims consist of certain Claims of governmental units for taxes and will be paid as provided by the terms of the Plan. Lawrence A. Zeccola and Frank W. Zeccola shall fund on or before the Effective Date, any funds needed to satisfy the Allowed Priority Tax Claims, if any.

6.2.6    **No Liability for Certain Tax Claims**. To the extent that any Claim asserted by a governmental taxing authority seeks recovery of a fine on or penalty against the Debtor, that portion of such Claim, if allowed, which represents such fine or penalty, shall be treated as a Class 6 Claim.

6.2.7    **Priority of Claims**. The priority scheme provided by §507 of the Bankruptcy Code shall apply to distributions made under the Plan to Allowed Administrative Claims, Allowed Priority Claims, Allowed Priority Tax Claims and Allowed Unsecured Claims. In the event the Debtor fails to fully effectuate the Plan, and this case is converted to Chapter 7 of the Bankruptcy Code, Claims entitled to priority pursuant to § 507 of the Bankruptcy Code as of the Effective Date shall continue to have such priority and shall be paid in full in order of priority as provided therein and prior to payment of any other Unsecured Claims.

**6.3**        **Estimation of Claims**. The Classes of Creditors and the estimated principal amount of the claims in each Class as of the Petition Date for each Debtor are detailed in Section 5.2 of this Disclosure Statement.

**6.4**        **Treatment of Claims and Interests**.   Only the holders of Allowed

Claims - that is holders of claims which are not in dispute, are not contingent, are not unliquidated in amount and are not subject to objection or estimation - are entitled to receive distributions under the Plan. Until a Claim becomes an Allowed Claim, distributions will not be made to the holder of such Claim. The Plan provides for the division of holders of Claims into the following Classes:

### Class 1. <u>Pre-Petition Real Estate Tax Claims and Other Secured Claims of Governmental Units</u>.

      (1) <u>Treatment/Distribution</u>. Each Governmental Unit shall retain a Lien on each Building Lot to the extent of its Allowed Secured Claim in connection with each Building Lot. Each time a Building Lot is conveyed, the conveyance shall be subject to the respective Lien arising from the Allowed Class 1 Secured Claim in connection with said Building Lot, unless the applicable Governmental Unit is paid, in cash, at the time of the conveyance the amount of its Allowed Secured Class 1 Claim related to the Building Lot being conveyed.

### Class 2. <u>Secured Claims of Citizens</u>.

      (1) <u>Amount of Allowed Claim</u>. The Allowed Claim of Citizens is evidenced by the following:

      (a) A mortgage note from the Debtor dated May 30, 2006, in the original principal amount of $4,850,000 (the "Phases 1 and 2 Note"), a reimbursement agreement for standby letters of credit dated May 30, 2006, as amended, a guaranty and suretyship agreements dated May 30, 2006 from Zeccola Builders, Inc., Lawrence A. Zeccola, Sr., Frank W. Zeccola, and Huntington Development, LLC, a mortgage and security agreement dated May 30, 2006 from the Debtor (mortgaged premises consists of all Building Lots excluding Building Lot No. 76), a mortgage and security agreement dated May 30, 2006 from Huntington Development, LLC (mortgaged premises is real property owned by mortgagor), an absolute assignment of leases and rents and that certain collateral assignment of agreements affecting real estate, as amended. As of September 30, 2009, the outstanding principal balance due Citizens in connection with the Phases 1 and 2 Note was as follows: (1) principal payable was $1,955,000.00, (2) principal payable in connection with reimbursement agreement for standby letters of credit was $1,043,966.50, plus (3) accrued interest and reasonable fees and costs to the extent allowed under 11 U.S.C. § 506(b). To the extent that the Court determines that Citizens' Allowed Claim in connection with the Phases 1 and 2 Note is different than the amount fixed herein, the amount fixed by the Court shall control under the Plan, unless otherwise agreed by Citizens and the Debtor, and approved by the Court.

      (b) A mortgage note from the Debtor dated May 30, 2006, in the original principal amount of $11,925,000 (the "Phases 3 to 8 Note"), guaranty and suretyship agreements dated May 30, 2006 from Lawrence A. Zeccola, Sr. and Frank W. Zeccola, a mortgage and security agreement dated May 30, 2006 from the Debtor (mortgaged premises consists of all Building Lots excluding Building Lot No. 76), an absolute assignment of leases and rents, and an interest rate swap agreement dated June 28, 2006. As of September 30, 2009, the outstanding principal balance due Citizens in connection with the Phases 3 to 8 Note was as follows:

(1) principal payable was $10,543,520.36, (2) outstanding payments due under the SWAP Agreement was $92,412.67, (3) SWAP termination fee was $30,325.00, plus (4) accrued interest and reasonable fees and costs to the extent allowed under 11 U.S.C. § 506(b). To the extent that the Court determines that Citizens' Allowed Claim in connection with the Phases 3 to 8 Note is different than the amount fixed herein, the amount fixed by the Court shall control under the Plan, unless otherwise agreed by Citizens and the Debtor, and approved by the Court.

(2)        <u>Amount of Allowed Secured Claim</u>.

(a)      The amount of the Allowed Secured Claim of Citizens that arises in connection with the Phases 1 and 2 Note shall equal the fair market value of the Citizens Collateral. The Allowed Claim of Citizens that arises in connection with the Phases 1 and 2 Note is secured by a second mortgage lien on the Citizens Collateral. The Debtor asserts that the value of Citizens Collateral equals or exceeds the amount of the Allowed Claim of Citizens that arises in connection with the Phases 1 and 2 Note. Accordingly, the Allowed Claim of Citizens that arises in connection with the Phases 1 and 2 Note is treated as a fully secured claim. To the extent that the Court determines that the Allowed Secured Claim of Citizens in connection with the Phases 1 to 2 Note is different than the amount fixed herein, the amount fixed by the Court shall control under the Plan, unless otherwise agreed by Citizens and the Debtor, and approved by the Court. The Allowed Claim of Citizens that arises in connection with the Phases 1 and 2 Note is also secured by the Citizens Non-Debtor Collateral.

(b)      The amount of the Allowed Secured Claim of Citizens that arises in connection with the Phases 3 to 8 Note shall equal the fair market value of the Citizens Collateral. The Allowed Claim of Citizens that arises in connection with the Phases 3 to 8 Note is secured by a first mortgage lien on the Citizens Collateral. The Debtor asserts that the value of Citizens Collateral exceeds the amount of the Allowed Claim of Citizens that arises in connection with the Phases 3 to 8 Note. Accordingly, the Allowed Claim of Citizens that arises in connection with the Phases 3 to 8 Note is treated as a fully secured claim. To the extent that the Court determines that the Allowed Secured Claim of Citizens in connection with the Phases 3 to 8 Note is different than the amount fixed herein, the amount fixed by the Court shall control under the Plan, unless otherwise agreed by Citizens and the Debtor, and approved by the Court. The Allowed Claim of Citizens that arises in connection with the Phases 3 to 8 Note is not secured by the Citizens Non-Debtor Collateral.

(3)      <u>Payment of Citizens</u>. The Allowed Secured Claim of Citizens in connection with both the Phases 1 and 2 Note and the Phases 3 to 8 Note shall be paid by the Debtor providing Citizens the option of either: (i) the Debtor surrendering the Citizens Collateral to Citizens by the delivery of a deed on the Effective Date, in recordable form, from the Debtor as grantor, to Citizens or its nominee, as grantee, that provides for the conveyance of the Citizens Collateral or (ii) the Debtor authorizing Citizens to foreclose on the Citizens Collateral on the Effective Date. Citizens must make its selection within fifteen (15) days of confirmation; otherwise, the Debtor shall surrender the Citizens Collateral to Citizens by delivery of a deed under the first option.

The value of the Citizens Collateral will be determined at the Confirmation Hearing by the Court. The value of the Citizens Collateral will be credited against the Class 2 Claims. In the event that the Court determines that the conveyance of the Citizens Collateral to Citizens does not satisfy the Class 2 Claims in full, the value of the Citizens Collateral, as determined by the Court, shall be credited against the Class 2 Claims and Citizens shall retain its rights and remedies for the balance due, after such credit, against the Debtor, and all non-debtor sureties and guarantors. If the value of the Citizens Collateral conveyed to Citizens as determined by the Court exceeds the Citizens debt, Citizens will retain the excess and Citizens Class 2 Claim will be paid in full and it will have no further claim against the Debtor.

(4) <u>Deficiency Claim</u>. The portion of Citizens' Claim that is determined to be a Deficiency Claim shall be treated in the same manner as a holder of a Class 5 Claim. The Debtor asserts that the Citizens Collateral equals or exceeds the amount of the Citizens Claim and therefore, Citizens holds no Deficiency Claim.

(5) <u>Retention of Liens</u>. Citizens shall retain its liens in the same priority, extent and validity as existed on the Petition Date until the Class 2 Claims are satisfied in full.

### Class 3. <u>Secured Claims of KSJS</u>.

(1) <u>Amount of Allowed Claim</u>. The Allowed Claim of KSJS is evidenced by a multiple advance promissory note, dated July 22, 2009, in the original principal amount of $544,000 (the "KSJS Note"), a loan agreement, dated July 22, 2009, a mortgage and security agreement dated July 22, 2009 from the Debtor (mortgaged premises consists of Building Lot No. 76), an assignment of rents, leases and contracts, an assignment of permits, approvals, and miscellaneous contracts, a memorandum of understanding dated July 22, 2009 and guaranty and suretyship agreement dated July 22, 2009 from Frank W. Zeccola and Lawrence A. Zeccola. As of January 1, 2010, the outstanding principal balance due KSJS in connection with KSJS Note was $119,514, plus accrued interest and reasonable fees and costs to the extent allowed under 11 U.S.C. § 506(b). To the extent that the Court determines that KSJS' Allowed Claim is different than the amount fixed herein, the amount fixed by the Court shall control under the Plan, unless otherwise agreed by KSJS and the Debtor, and approved by the Court.

(2) <u>Amount of Allowed Secured Claim</u>. The amount of the Allowed Secured Claim of KSJS shall equal the fair market value of the KSJS Collateral. The Allowed Claim of KSJS is secured by a first mortgage lien on the KSJS Collateral. The Debtor asserts that the value of KSJS Collateral equals or exceeds the amount of the Allowed Claim of KSJS. Accordingly, the Allowed Claim of KSJS is treated as a fully secured claim. To the extent that the Court determines that the Allowed Secured Claim of KSJS is different than the amount fixed herein, the amount fixed by the Court shall control under the Plan, unless otherwise agreed by KSJS and the Debtor, and approved by the Court.

(3)           <u>Payment of KSJS</u>. The Allowed Secured Claim KSJS shall be paid by the Debtor surrendering to KSJS on the Effective Date the KSJS Collateral. The surrender of the KSJS Collateral shall be effectuated by the delivery of a deed on the Effective Date, in recordable form, from the Debtor as grantor, to KSJS or its nominee, as grantee, that provides for the conveyance of KSJS Collateral. The Debtor asserts that the value of KSJS Collateral equals or exceeds the amount of the Allowed Claim of KSJS and therefore, the surrender to KSJS of the KSJS Collateral represents satisfaction in full of the KSJS Allowed Claim.

The value of the KSJS Collateral will be determined at the Confirmation Hearing by the Court. The value of the KSJS Collateral will be credited against the Class 3 Claims. In the event that the Court determines that the conveyance of the KSJS Collateral to KSJS does not satisfy the Class 3 Claims in full, the value of the KSJS Collateral, as determined by the Court, shall be credited against the Class 3 Claims and KSJS shall retain its rights and remedies for the balance due, after such credit, against the Debtor, and all non-debtor sureties and guarantors. If the value of the KSJS Collateral conveyed to KSJS as determined by the Court exceeds the KSJS debt, KSJS will retain the excess and KSJS' Class 3 Claim will be paid in full and it will have no further claim against the Debtor.

(4)           <u>Deficiency Claim</u>. The portion of KSJS' Claim that is determined to be a Deficiency Claim shall be treated in the same manner as a holder of a Class 5 Claim. The Debtor asserts that the KSJS Collateral equals or exceeds the amount of the KSJS Claim and therefore, KSJS holds no Deficiency Claim.

(5)           <u>Retention of Liens</u>. KSJS shall retain its liens in the same priority, extent and validity as existed on the Petition Date until the Class 3 Claims are satisfied in full.

**Class 4.**   **Priority Non-Tax Claims**. Class 4 is not impaired. The treatment and consideration to be received by holders of Allowed Class 4 Claims shall be deemed to be in full settlement, satisfaction, release and discharge of the respective Claims and Liens. Class 4 Allowed Claims will be paid in Cash on the later of the Effective Date or the Allowance Date.

**Class 5. General Unsecured Claims.** Class 5 is impaired. Each holder of an Allowed Unsecured Claim shall receive their Pro-Rata share of the funds remaining, if any, after the satisfaction of all Class 1 Claims, Class 2 Claims, Class 3 Claims, Class 4 Claims, Allowed Administrative Claims, and Allowed Priority Tax Claims. In addition to the above, holders of Allowed Class 5 Claims (excluding all claims held by Lawrence A. Zeccola, Frank W. Zeccola, Zeccola Builders, Inc. and FLZ Development, LLC) will receive, on a Pro-Rata basis, the amount of $18,000 from funds to be advanced by Lawrence A. Zeccola and Frank W. Zeccola on the Effective Date of the Plan.

(1)           <u>General Provisions</u>**.** No interest will be paid on account of Class 5 Claims. No Unsecured Claim shall be Allowed to the extent that it is for post-Petition interest or other similar post-Petition charges. Notwithstanding the foregoing, any

Unsecured Claim as to which insurance coverage exists and is paid shall not receive a distribution hereunder but, rather, shall be paid exclusively as provided under the applicable policy or policies of insurance, unless the Claim is underinsured, in which case, the Allowed Unsecured Claim (to the extent underinsured) shall receive its payment thereunder.

**Class 6. Interest Holders.** Class 6 is impaired. Class 6 Interests in the Debtor shall be cancelled and extinguished as of the Effective Date, and holders of such Interests shall not be entitled to, and shall not receive or retain any property or interest in property under the Plan on account of such Interests.

## 7.     PROVISIONS FOR EXECUTION OF THE PLAN

**7.1                    Retention of Assets by the Estate**. The assets of the Debtor's Estate shall not vest in the Debtor, but shall continue to vest in the Estate after the Effective Date. The Disbursing Agent shall administer the Assets in possession of the Estate after the Effective Date and shall be deemed the judicial substitute for the Debtor as the party-in-interest in its Bankruptcy Case or any judicial proceeding or appeal to which the Debtor is a party, consistent with § 1123(b)(3)(B) of the Bankruptcy Code.

**7.2                    Funds**. Upon the occurrence of the Effective Date, all funds under the control or possession of the Debtor shall be transferred and deposited into the Distribution Account. The funds to effect the payments under this Plan will be generated from (i) cash on hand in any deposit account of the Debtor which shall be transferred to the Distribution Account, as provided herein, (ii) funds paid on or before the Effective Date by Lawrence A. Zeccola and Frank W. Zeccola to the Debtor or Disbursing Agent, as may be applicable and required, to satisfy the Allowed Administrative Claims including, Fee Claims of Professional Persons approved by the Court and to fund the $18,000 payment to holders of Allowed Unsecured Claims, (iii) proceeds from any sale or liquidation of the Debtor's Assets, and (iv) any other funds that may be received by the Debtor or its Estate after the Effective Date and subsequently turned over to the Disbursing Agent.

**7.3                    Surrender of Building Lot No. 76**. The Debtor has entered into a construction contract with Zeccola Builders, Inc. which provides, inter alia, for the construction of a home on Building Lot No. 76. The Debtor intends to continue to market for sale a new home on Building Lot No. 76. On the Effective Date and to the extent not closed and settled prior to such date, the Debtor shall surrender and convey to KSJS or its nominee Building Lot No. 76 along with all of its rights in the related construction contract (which shall be assumed and assigned pursuant to Section 7.1 of the Plan) in full and final satisfaction of the KSJS Allowed Claim. The surrender of the KSJS Collateral shall be effectuated by the delivery of a deed on the Effective Date, in recordable form, from the Debtor as grantor, to KSJS or its nominee, as grantee, that provides for the conveyance of KSJS Collateral. Delivery of the deed on the Effective Date to KSJS or its nominee shall evidence the surrender of the KSJS Collateral. In the event that the Court determines that the conveyance of the KSJS Collateral to KSJS does not satisfy the Class 3 Claims in full, the value of the KSJS Collateral, as determined by the Court, shall be credited against the Class 3 Claims and KSJS shall retain its rights and remedies for the balance due, after such credit, against the

Debtor, and all non-debtor sureties and guarantors. If the value of the KSJS Collateral conveyed to KSJS as determined by the Court exceeds the KSJS debt, KSJS will retain the excess and KSJS' Class 3 Claim will be paid in full and it will have no further claim against the Debtor.


**7.4**            <u>**Surrender of Building Lots to Citizens**</u>. On the Effective Date, the Debtor shall, at the option of Citizens, either: (i) surrender the Citizens Collateral to Citizens by the delivery of a deed on the Effective Date, in recordable form, from the Debtor as grantor, to Citizens or its nominee, as grantee, that provides for the conveyance of the Citizens Collateral or (ii) authorize Citizens to foreclose on the Citizens Collateral on the Effective Date. In the event that the Court determines that the conveyance of the Citizens Collateral to Citizens does not satisfy the Class 2 Claims in full, the value of the Citizens Collateral, as determined by the Court, shall be credited against the Class 2 Claims and Citizens shall retain its rights and remedies for the balance due, after such credit, against the Debtor, and all non-debtor sureties and guarantors. If the value of the Citizens Collateral conveyed to Citizens as determined by the Court exceeds the Citizens debt, Citizens will retain the excess and Citizens' Class 2 Claim will be paid in full and it will have no further claim against the Debtor.


**7.5**            <u>**Disposition of Debtor's Assets**</u>. Except as otherwise provided herein, the Disbursing Agent, in the name of the Debtor's Estate, shall continue in possession of the Assets, if any, after the Effective Date for the purpose of liquidating such Assets in accordance with the terms of this Plan. The Disbursing Agent may sell, collect or otherwise liquidate the Debtor's Assets in such a manner as determined by the Disbursing Agent.


**7.6**            <u>**Documents.**</u> Prior to the Effective Date, the Debtor is authorized and directed to execute and deliver all documents and to take and to cause to be taken all action necessary or appropriate to execute and implement the provisions of this Plan. Upon the occurrence of the Effective Date, the Disbursing Agent is authorized and directed to execute and deliver all documents and to take and to cause to be taken all action necessary or appropriate to execute and implement the provisions of this Plan.


**7.7**            <u>**Disbursements and Investment of Funds**</u>. All distributions under this Plan shall be made by the Disbursing Agent. The Disbursing Agent shall invest funds from the liquidation of the Debtor's Assets pending distribution to holders of Allowed Claims consistent with § 345(a) of the Bankruptcy Code. The Disbursing Agent shall be authorized to use the funds in the Distribution Account to pay for post-confirmation operating expenses incurred by the Disbursing Agent and its professionals. The Disbursing Agent shall also be authorized to pay its professionals' fees, consisting of its counsel, Maschmeyer Karalis P.C., upon presentation of an invoice to the Disbursing Agent and after the Disbursing Agent has reviewed and approved said invoice.


**7.8**            <u>**Final Decree.**</u> After consummation of the Plan and as soon as there are no pending matters for which the case must remain open, the Disbursing Agent shall file a motion to close the case and request that a final decree by issued.

**7.9**           **Winding Up Affairs**. Following the Effective Date, the Disbursing Agent shall not engage in any business activities or take any actions, except those necessary to consummate the Plan and wind up the affairs of the Debtor.

**7.10**          **Corporate Action**. Each of the matters provided for under the Plan involving the corporate structure of the Debtor or corporate action to be taken by or required of the Debtor will, as of the Effective Date, be deemed to have occurred and be effective as provided herein, and will be authorized, approved and, to the extent taken prior to the Effective Date, ratified in all respects without any requirement of further action by stockholders, creditors, or directors of the Debtor.

**7.11**          **Disbursing Agent**. Upon and after the Effective Date, the Disbursing Agent shall manage the Estate of the Debtor. The Disbursing Agent, in addition to all other powers granted pursuant to this Plan, shall also be authorized to (i) collect and liquidate the Debtor's remaining Assets; (ii) pursue, in accordance with its sole reasonable business judgment, all pending bankruptcy Causes of Action and non-bankruptcy Causes of Action, all outstanding Accounts Receivable; and (iii) take all other actions required under the Plan to complete the administration of the Estate as deemed appropriate by the Disbursing Agent in its sole discretion. The Disbursing Agent shall also be authorized and directed to review, object to, negotiate, settle or otherwise compromise any Claims or other Causes of Action. The Disbursing Agent shall not be required to maintain a fiduciary bond for the Estate Funds administered by the Disbursing Agent. No action or claim may be asserted against the Disbursing Agent in any court, without first obtaining approval of the Bankruptcy Court, and, in such event, any such action must be prosecuted before the Bankruptcy Court, which shall retain jurisdiction to adjudicate any such actions. The Disbursing Agent is acting solely as a fiduciary on behalf of the Debtor and its Estate and the recovery of any claim asserted against the Disbursing Agent shall be limited to the Assets of the Estate that he is administering. The Disbursing Agent shall have no personal liability for serving in the fiduciary capacity of Disbursing Agent, except for willful misconduct or gross negligence.

**7.12**          **Exemption from Transfer Taxes**. The making or delivery of any deed or other instrument of transfer for the Building Lots owned by the Debtor after the confirmation of the Plan shall constitute a "transfer under the Plan" within the purview of § 1146(a) of the Bankruptcy Code and shall not be subject to any stamp, real estate transfer, or other similar tax imposed by any federal, state or local authority, including without limitation, any tax imposed by the State of Delaware, Kent County, or the Town of Clayton. As a result, the Debtor's conveyance of the Building Lots and the proceeds therefrom, if any, shall be exempt from any stamp, real estate transfer, or other similar tax imposed by any governmental unit.

**7.13**          **Final Tax Returns**. The Disbursing Agent shall not be required to prepare or file on behalf of the Debtor's Estate any state or federal tax return. The Disbursing Agent shall have no liability for any tax due.

**8.**      **GENERAL PROVISIONS**

**8.1**             **Retention of Jurisdiction**.  The Plan provides that the Bankruptcy Court shall retain jurisdiction under the Plan for any and all purposes as are necessary or proper for the consummation of the Plan until the Plan is fully consummated and the case closed to further administration.

**8.2**             **Possible Tax Ramifications**.  Each Creditor and Interest holder should consult their own tax advisor as to the specific tax consequences to such person of any term of the Plan, including the application and effect of federal, state and local income and other tax laws before determining whether to accept or reject the Plan.

**8.3**             **Assumed Executory Contracts and Unexpired Leases**.  Each executory contract and unexpired lease identified on Schedule 7.1 attached to the Plan, shall be deemed automatically assumed in accordance with the provisions and requirements of §§ 365 and 1123 of the Bankruptcy Code as of the Effective Date and shall be assigned to KSJS or its nominee as provided by Section 5.3 of the Plan.  There is no arrearage to cure upon the assumption and assignment of the executory contracts identified on Schedule 7.1 attached to the Plan.  Entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of such assumptions and assignments pursuant to §§ 365 and 1123 of the Bankruptcy Code.  Each executory contract and unexpired lease assumed and assigned pursuant to Section 7.1 of the Plan shall vest in and be fully enforceable by KSJS in accordance with its terms, except as modified by (a) any written agreement between KSJS and the respective lessor, (b) the provisions of this Plan, or (c) any order of the Bankruptcy Court authorizing or providing for its assumption.  All written agreements between the Debtor or KSJS and each respective lessor that modify any executory contract or unexpired lease being assumed pursuant to Section 7.1 of the Plan shall be filed with the Court on or before the Confirmation Hearing.  The Debtor reserves the right to file a motion on or before the Confirmation Date to assume or reject any executory contract or unexpired lease.

**8.4**             **Rejected Executory Contracts and Unexpired Leases**.  Except with respect to (i) executory contracts and unexpired leases assumed or assumed and assigned as provided by Section 7.1 of the Plan and (ii) executory contracts and unexpired leases that have been previously rejected by order of the Bankruptcy Court, or are the subject of a motion to reject filed on or before the Confirmation Date, all other executory contracts and unexpired leases including, those identified on Schedule 7.2 attached to the Plan shall be deemed automatically rejected as of the Confirmation Date.  Entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of the rejections contemplated herein,  pursuant to §§ 365 and 1123 of the Bankruptcy Code.  The Debtor reserves the right to (a) file a motion on or before the Confirmation Date to reject any executory contract and/or unexpired lease and (b) modify or supplement Schedule 7.1 and/or 7.2 at any time prior to the Confirmation Date.  Any non-debtor party to a rejected executory contract must be able to specifically identify items covered by any rejected executory contract as a condition precedent to the recovery of any such item and the removal of such item from the possession of the Debtor (or the Reorganized Debtor, as the case may be).

**8.5**             **Payments related to Assumption of Executory Contracts or Unexpired Leases**.  The provisions of each executory contract to be assumed under the Plan which

are or may be in default shall be satisfied solely by the Cure for Executory Contracts. In the event of a dispute regarding (a) the nature or the amount of any Cure for Executory Contracts, (b) the ability of the Reorganized Debtor to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the contract to be assumed, or (c) any other matter pertaining to assumption, Cure for Executory Contracts shall occur as soon as practicable following the entry of a Final Order resolving the dispute and approving the assumption. The provision (if any) of each executory contract to be assumed under the Plan which are or may be in default shall be satisfied in a manner to be agreed upon by the applicable creditor and the Debtor.

**8.6**     **Rejection Damages Bar Date.** If the rejection by the Debtor (pursuant to the Plan or otherwise) of any executory contract or unexpired lease results in a Claim, then such Claim shall be forever barred and shall not be enforceable against the Debtor or the Reorganized Debtor, or such entities' properties unless a proof of claim is filed with the Bankruptcy Court and served upon counsel for the Debtor within thirty (30) days after service of the earlier of (a) notice of the Confirmation Order, or (b) other notice or order that the executory contract and unexpired lease has been rejected; provided, however, that the foregoing requirement to file a proof of claim shall not be applicable to any such Claim that was previously allowed by Final Order of the Bankruptcy Court.

**8.7**     **Powers**. The Debtor shall have the right to settle, compromise, sell, assign, terminate, release, discontinue or abandon any Cause of Action from time to time in its sole discretion.

**8.8**     **Objections to Claims; Prosecution of Disputed Claims**. The Debtor may object to the allowance of Claims filed with the Court and all objections to the allowance of Claims shall be litigated to Final Order or compromised and settled, subject to approval of the Bankruptcy Court after notice only to the Debtor, the holder of such Claim, and parties requesting notices in the case pursuant to applicable Bankruptcy Rules, and a hearing. Failure to object to any Claim for purposes of voting on the Plan shall not be deemed a waiver of the right to object to such Claim at any later date.

**8.9**     **Late Filed Claims.** No objection shall be filed with respect to any proof of claim filed after the Bar Date, and the holder of any such late filed proof of claim shall receive no distribution under the Plan, except as specifically ordered by the Bankruptcy Court following a motion by such claimant, after notice to the Debtor, counsel for the Debtor, and such parties as the Court may direct, and a motion and hearing thereon. Any such motion shall be filed on or before the Effective Date or the holder of such Claims shall be forever barred and all such Claims shall be discharged. Nothing herein shall constitute a waiver by the Debtor of any counterclaims, setoffs, or of any defenses with respect to such late filed proofs of claim, including defenses as to the timeliness of the filing of such proofs of claim.

**8.10**     **No Distributions Pending Allowance**. No payments or distributions will be made with respect to all or any portion of a Disputed Claim unless and until all objections to such Disputed Claim have been settled or withdrawn or have been determined by a Final Order,

and the Disputed Claim becomes an Allowed Claim.

**8.11**                  **Reserve for Disputed Unsecured Claims**. On or after the Effective Date, the Debtor shall hold in the Disputed Unsecured Claim Reserve, Cash in an aggregate amount sufficient to pay each holder of a Disputed Unsecured Claim at the time distributions are made, pursuant to the Plan, the amount of cash such holder would have been entitled to receive if such claim had been an Allowed Claim on the Effective Date. Cash withheld and reserved for payments to holders of Disputed Unsecured Claims shall be held and deposited by the Debtor in one or more segregated reserve accounts to be used to satisfy such Claims as such Disputed Unsecured Claims become Allowed Claims. If practicable, the Debtor may invest cash in the disputed unsecured claim reserve in a manner that will yield a reasonable net return, taking into account the safety of the investment. Nothing herein shall be deemed to entitle the holder of a Disputed Claim to post-petition interest on such Claim.

**8.12**                  **Estimation Period**. The Debtor may, at any time after the Effective Date, request that the Bankruptcy Court estimate any unliquidated, contingent or Disputed Claim pursuant to §502(c) of the Bankruptcy Code, regardless of whether the Claim has previously been objected to. In the event that the Bankruptcy Court estimates any unliquidated, contingent or Disputed Claim, the estimated amount may constitute a maximum limitation on such Claim, as determined by the Bankruptcy Court. Notwithstanding this, the Debtor may elect to pursue any supplemental proceedings to object to the allowance and payment of such Claim. All of the aforementioned Claims objection and estimation procedures are cumulative and not exclusive of one another.

**8.13**                  **Distributions After Allowance**. Payments and distributions to each holder of a Disputed Claim, to the extent that it ultimately becomes an Allowed Claim, will be made in accordance with the provisions of the Plan that governs distributions to such Claimants.

**8.14**                  **Automatic Stay**. The automatic stay of §362 of the Code shall remain in effect until the Effective Date.

**8.15**                  **Right to Revoke or Withdraw**. The Debtor reserves the right to revoke or withdraw the Plan at anytime prior to the Effective Date.

**8.16**                  **Effect of Withdrawal, Revocation, or Non-Consummation**. If the Debtor revokes or withdraws the Plan prior to the Effective Date, or if the Confirmation Date or the Effective Date does not occur, then the Plan, any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain any Claim or Interest or Class of Claims or Interests), the assumption or rejection of executory contracts or unexpired leases effected by the Plan and any document or agreement executed pursuant to the Plan, shall be null and void. In such event, nothing contained herein, and no acts taken in preparation for consummation of the Plan, shall be deemed to constitute a waiver or release of any Claims by or against or Interests in the Debtor or any other Person, to prejudice in any manner the rights of the Debtor or any Person in any further proceedings involving the Debtor, or to constitute an admission of any sort by the Debtor or any other Person.

**8.17** **Liability in Connection with Plan.** Neither the Debtor, nor any of its respective attorneys, accountants and agents shall have, nor shall they incur, any liability to any Creditor or Person for any act or omission in connection with or arising out of their duties and participation in the Case, the administration of the Plan or the property to be distributed under the Plan, except for gross negligence or willful misconduct, and all such Persons shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan. The foregoing shall not, however, affect the liability of the Debtor to any Creditor in connection with any Allowed Claim under the Plan; nor shall the foregoing affect the liability of any party with respect to any act or omission that has occurred prior to the Petition Date.

**8.18** **No Discharge of Debtor**. The Confirmation Order shall not discharge the Debtor from any debt and liability that arose before the confirmation, as provided in § 1141(d)(3)(A) of the Bankruptcy Code.

9.     **OTHER INFORMATION**.

Inquiries regarding information not contained in this Disclosure Statement may be made by contacting counsel for the Debtor, Aris J. Karalis, Esquire, Maschmeyer Karalis P.C., 1900 Spruce Street, Philadelphia, PA 19103, (215) 546-4500, akaralis@cmklaw.com.

                                    **ALL LAND INVESTMENTS, LLC**


                                    By:    /s/ Lawrence A. Zeccola, Sr.
___
                          Lawrence A. Zeccola, Sr.,
                          Managing Member


        **RAWLE & HENDERSON LLP**


        By:    /s/ Gary F. Seitz
                Gary F. Seitz, Esquire
                Local Counsel for the Debtor


        **MASCHMEYER KARALIS P.C.**


        By:    /s/ Aris J. Karalis
                Aris J. Karalis, Esquire (admitted *pro hac vice*)
                Robert W. Seitzer, Esquire (admitted *pro hac vice*)
                Lead Counsel for the Debtor

Dated: ~~January~~February 2~~1~~6, 2010

**LIST OF EXHIBITS AND SCHEDULES**
**TO DISCLOSURE STATEMENT**

EXHIBIT 4.10                  LIQUIDATION ANALYSIS

EXHIBIT 5.1                   SCHEDULE OF REAL PROPERTY OWNED BY THE DEBTOR

# AMENDED EXHIBIT 4.10
# LIQUIDATION ANALYSIS

# AMENDED EXHIBIT 4.10

## ALL LAND INVESTMENTS, LLC
## BANKRUPTCY NO. 09-13790(KJC)
## LIQUIDATION ANALYSIS AS OF EFFECTIVE DATE

## CHAPTER 11

### Assets

330 Approved/Unimproved Lots <u>and 62 Approved/Improved Lots</u> ~~at $44,011.98 per Lot~~
~~$14,523,953~~                                                    $13,665,224

~~62 Approved/Improved Lots at $80,603.45 per Lot~~                ~~$4,997,413~~

Lot 98- Partially completed home ~~with a purchase~~              $119,514~~231,035~~

~~price of $240,070.00  $9,035.00 (cost to complete)~~

|  | **TOTAL** | **=** |  |
|---|---|---|---|
|  |  |  | $13,784,738~~19,752,401~~ |

### Liabilities

| | | |
|---|---|---|
| Class 1- Pre-Petition Real Estate Taxes | | ($4,962) |
| Class 2- Secured Claim of RBS Citizens, N.A. | | ($13,665,224) |
| Class 3- Secured Claim of KSJS Investment Associates, LLC | | (119,514) |
| | **TOTAL** = | $13,789,700 |

## CHAPTER 7

### Chapter 7 Administrative Claims

| | | |
|---|---|---|
| Trustee Fees | | ($40~~86~~,000) |
| Trustee's Broker Fees | | ($5~~47~~79~~0~~,000) |
| Trustee's Legal Fees | | ($200,000) |
| | **TOTAL** = | $1,~~1~~47~~476~~,000 |

### DEFICIENCY~~SURPLUS~~ OF ASSETS
~~$4,486,701~~                                                   $1,151,962

# EXHIBIT 5.1
# REAL PROPERTY OWNED BY THE DEBTOR

63 Approved/Improved Lots

330 Approved/unimproved Lots

| Lot No. | Phase No. | Address Kent County Delaware Clayton, DE 19938 | Tax Parcel No. | Land Status |
|---|---|---|---|---|
| 3 | 2 | 55 PARMA DRIVE | 03-04-027.01-01-03.00-000 | Improved |
| 4 | 2 | 71 PARMA DRIVE | 03-04-027.01-01-04.00-000 | Improved |
| 9 | 2 | CORNER LOT | 03-04-027.01-01-09.00-000 | Improved |
| 11 | 2 | 134 PARMA DRIVE | 03-04-027.01-01-11.00-000 | Improved |
| 12 | 2 | 120 PARMA DRIVE | 03-04-027.01-01-12.00-000 | Improved |
| 13 | 2 | 106 PARMA DRIVE | 03-04-027.01-01-13.00-000 | Improved |
| 14 | 2 | 92 PARMA DRIVE | 03-04-027.01-01-14.00-000 | Improved |
| 15 | 2 | 80 PARMA DRIVE | 03-04-027.01-01-15.00-000 | Improved |
| 16 | 2 | 66 PARMA DRIVE | 03-04-027.01-01-16.00-000 | Improved |
| 17 | 2 | 54 PARMA DRIVE | 03-04-027.01-01-17.00-000 | Improved |
| 18 | 2 | 40 PARMA DRIVE | 03-04-027.01-01-18.00-000 | Improved |
| 19 | 2 | 28 PARMA DRIVE | 03-04-027.01-01-19.00-000 | Improved |
| 20 | 2 | CORNER LOT | 03-04-027.01-01-20.00-000 | Improved |
| 21 | 2 | CORNER LOT | 03-04-027.01-01-21.00-000 | Improved |
| 22 | 2 | 27 SAN MARINO DRIVE | 03-04-027.01-01-22.00-000 | Improved |
| 23 | 2 | 41 SAN MARINO DRIVE | 03-04-027.01-01-23.00-000 | Improved |
| 24 | 2 | 53 SAN MARINO DRIVE | 03-04-027.01-01-24.00-000 | Improved |
| 25 | 2 | 67 SAN MARINO DRIVE | 03-04-027.01-01-25.00-000 | Improved |
| 26 | 2 | 81 SAN MARINO DRIVE | 03-04-027.01-01-26.00-000 | Improved |
| 27 | 2 | 93 SAN MARINO DRIVE | 03-04-027.01-01-27.00-000 | Improved |
| 28 | 2 | 107 SAN MARINO DRIVE | 03-04-027.01-01-28.00-000 | Improved |
| 29 | 2 | 119 SAN MARINO DRIVE | 03-04-027.01-01-29.00-000 | Improved |
| 31 | 2 | CORNER LOT | 03-04-027.01-01-31.00-000 | Improved |
| 33 | 2 | 132 SAN MARINO DRIVE | 03-04-027.01-01-33.00-000 | Improved |
| 35 | 2 | 106 SAN MARINO DRIVE | 03-04-027.01-01-35.00-000 | Improved |
| 36 | 2 | 92 SAN MARINO DRIVE | 03-04-027.01-01-36.00-000 | Improved |
| 37 | 2 | 80 SAN MARINO DRIVE | 03-04-027.01-01-37.00-000 | Improved |
| 38 | 2 | 66 SAN MARINO DRIVE | 03-04-027.01-01-38.00-000 | Improved |
| 39 | 2 | 54 SAN MARINO DRIVE | 03-04-027.01-01-39.00-000 | Improved |
| 40 | 2 | 40 SAN MARINO DRIVE | 03-04-027.01-01-40.00-000 | Improved |
| 41 | 2 | 26 SAN MARINO DRIVE | 03-04-027.01-01-41.00-000 | Improved |
| 42 | 2 | CORNER LOT | 03-04-027.01-01-42.00-000 | Improved |
| 43 | 2 | CORNER LOT | 03-04-027.01-01-43.00-000 | Improved |
| 44 | 2 | 27 ABRUZZI DRIVE | 03-04-027.01-01-44.00-000 | Improved |
| 45 | 2 | 41 ABRUZZI DRIVE | 03-04-027.01-01-45.00-000 | Improved |
| 46 | 2 | 53 ABRUZZI DRIVE | 03-04-027.01-01-46.00-000 | Improved |
| 47 | 2 | 67 ABRUZZI DRIVE | 03-04-027.01-01-47.00-000 | Improved |
| 48 | 2 | 81 ABRUZZI DRIVE | 03-04-027.01-01-48.00-000 | Improved |
| 49 | 2 | 93 ABRUZZI DRIVE | 03-04-027.01-01-49.00-000 | Improved |
| 50 | 2 | 107 ABRUZZI DRIVE | 03-04-027.01-01-50.00-000 | Improved |

63 Approved/Improved Lots

330 Approved/unimproved Lots

| Lot No. | Phase No. | Address Kent County Delaware Clayton, DE 19938 | Tax Parcel No. | Land Status |
|---------|-----------|------------------------------------------------|----------------|-------------|
| 51 | 2 | 121 ABRUZZI DRIVE | 03-04-027.01-01-51.00-000 | Improved |
| 52 | 2 | 133 ABRUZZI DRIVE | 03-04-027.01-01-52.00-000 | Improved |
| 53 | 2 | CORNER LOT | 03-04-027.01-01-53.00-000 | Improved |
| 54 | 2 | CORNER LOT | 03-04-027.01-01-54.00-000 | Improved |
| 56 | 2 | 120 ABRUZZI DRIVE | 03-04-027.01-01-56.00-000 | Improved |
| 57 | 2 | 108 ABRUZZI DRIVE | 03-04-027.01-01-57.00-000 | Improved |
| 58 | 2 | 94 ABRUZZI DRIVE | 03-04-027.01-01-58.00-000 | Improved |
| 59 | 2 | 80 ABRUZZI DRIVE | 03-04-027.01-01-59.00-000 | Improved |
| 60 | 2 | 68 ABRUZZI DRIVE | 03-04-027.01-01-60.00-000 | Improved |
| 61 | 2 | 54 ABRUZZI DRIVE | 03-04-027.01-01-61.00-000 | Improved |
| 62 | 2 | 42 ABRUZZI DRIVE | 03-04-027.01-01-62.00-000 | Improved |
| 63 | 2 | 26 ABRUZZI DRIVE | 03-04-027.01-01-63.00-000 | Improved |
| 64 | 2 | CORNER LOT | 03-04-027.01-01-64.00-000 | Improved |
| 65 | 3 | CORNER LOT | 03-04-027.01-01-65.00-000 | Unimproved |
| 66 | 3 | 27 TURIN DRIVE | 03-04-027.01-01-66.00-000 | Unimproved |
| 67 | 3 | 41 TURIN DRIVE | 03-04-027.01-01-67.00-000 | Unimproved |
| 68 | 3 | 55 TURIN DRIVE | 03-04-027.01-01-68.00-000 | Unimproved |
| 69 | 3 | 67 TURIN DRIVE | 03-04-027.01-01-69.00-000 | Unimproved |
| 70 | 3 | 81 TURIN DRIVE | 03-04-027.01-01-70.00-000 | Unimproved |
| 71 | 3 | 95 TURIN DRIVE | 03-04-027.01-01-71.00-000 | Unimproved |
| 72 | 2 | 107 TURIN DRIVE | 03-04-027.01-01-72.00-000 | Improved |
| 73 | 2 | 121 TURIN DRIVE | 03-04-027.01-01-73.00-000 | Improved |
| 76 | 3 | 158 TURNIN DRIVE | 03-04-027.01-02-24.00-000 | Improved |
| 77 | 3 | 146 TURIN DRIVE | 03-04-027.01-02-23.00-000 | Improved |
| 79 | 3 | CORNER LOT | 03-04-027.01-02-21.00-000 | Improved |
| 80 | 3 | CORNER LOT | 03-04-027.01-02-29.00-000 | Unimproved |
| 81 | 3 | 216 VILLA DRIVE | 03-04-027.01-02-28.00-000 | Unimproved |
| 82 | 3 | 202 VILLA DRIVE | 03-04-027.01-02-27.00-000 | Unimproved |
| 83 | 3 | 190 VILLA DRIVE | 03-04-027.01-02-26.00-000 | Unimproved |
| 84 | 3 | CORNER LOT | 03-04-027.01-02-25.00-000 | Unimproved |
| 85 | 3 | CORNER LOT | 03-04-027.01-01-76.00-000 | Unimproved |
| 86 | 3 | 112 VILLA DRIVE | 03-04-027.01-01-89.00-000 | Unimproved |
| 87 | 3 | 90 VILLA DRIVE | 03-04-027.01-01-88.00-000 | Unimproved |
| 88 | 3 | 76 VILLA DRIVE | 03-04-027.01-01-87.00-000 | Unimproved |
| 89 | 3 | 62 VILLA DRIVE | 03-04-027.01-01-86.00-000 | Unimproved |
| 90 | 3 | 48 VILLA DRIVE | 03-04-027.01-01-85.00-000 | Unimproved |
| 92 | 3 | CORNER LOT | 03-04-027.01-01-83.00-000 | Improved |
| 95 | 2 | 139 AMALFI DRIVE | 03-04-027.01-01-80.00-000 | Improved |
| 96 | 3 | 157 AMALFI DRIVE | 03-04-027.01-01-79.00-000 | Improved |
| 97 | 3 | 179 AMALFI DRIVE | 03-04-027.01-01-78.00-000 | Improved |

63 Approved/Improved Lots

330 Approved/unimproved Lots

| Lot No. | Phase No. | Address<br>Kent County Delaware<br>Clayton, DE 19938 | Tax Parcel No. | Land Status |
|---|---|---|---|---|
| 100 | 3 | 23 VILLA DRIVE | 03-04-027.01-01-91.00-000 | Improved |
| 101 | 3 | 39 VILLA DRIVE | 03-04-027.01-01-92.00-000 | Unimproved |
| 102 | 3 | 51 VILLA DRIVE | 03-04-027.01-01-93.00-000 | Unimproved |
| 103 | 3 | 67 VILLA DRIVE | 03-04-027.01-01-94.00-000 | Unimproved |
| 104 | 3 | 79 VILLA DRIVE | 03-04-027.01-01-95.00-000 | Unimproved |
| 105 | 3 | 93 VILLA DRIVE | 03-04-027.01-02-01.00-000 | Unimproved |
| 106 | 3 | 105 VILLA DRIVE | 03-04-027.01-02-02.00-000 | Unimproved |
| 107 | 3 | 115 VILLA DRIVE | 03-04-027.01-02-03.00-000 | Unimproved |
| 108 | 3 | 127 VILLA DRIVE | 03-04-027.01-02-04.00-000 | Unimproved |
| 109 | 3 | 137 VILLA DRIVE | 03-04-027.01-02-05.00-000 | Unimproved |
| 110 | 3 | 149 VILLA DRIVE | 03-04-027.01-02-06.00-000 | Unimproved |
| 111 | 3 | 163 VILLA DRIVE | 03-04-027.01-02-07.00-000 | Unimproved |
| 112 | 3 | 175 VILLA DRIVE | 03-04-027.01-02-08.00-000 | Unimproved |
| 113 | 3 | 189 VILLA DRIVE | 03-04-027.01-02-09.00-000 | Unimproved |
| 114 | 3 | 203 VILLA DRIVE | 03-04-027.01-02-10.00-000 | Unimproved |
| 115 | 4 | 217 VILLA DRIVE | 03-04-027.01-02-11.00-000 | Unimproved |
| 116 | 4 | 229 VILLA DRIVE | 03-04-027.01-02-12.00-000 | Unimproved |
| 117 | 4 | 243 VILLA DRIVE | 03-04-027.01-02-13.00-000 | Unimproved |
| 118 | 4 | 255 VILLA DRIVE | 03-04-027.01-02-14.00-000 | Unimproved |
| 119 | 4 | 269 VILLA DRIVE | 03-04-027.01-02-15.00-000 | Unimproved |
| 120 | 4 | 283 VILLA DRIVE | 03-04-027.01-02-16.00-000 | Unimproved |
| 121 | 4 | 297 VILLA DRIVE | 03-04-027.01-02-17.00-000 | Unimproved |
| 122 | 4 | 309 VILLA DRIVE | 03-04-027.01-02-18.00-000 | Unimproved |
| 123 | 4 | 323 VILLA DRIVE | 03-04-027.01-02-19.00-000 | Unimproved |
| 124 | 4 | CORNER LOT | 03-04-027.01-02-20.00-000 | Unimproved |
| 125 | 3 | CORNER LOT | 03-04-027.01-02-30.00-000 | Unimproved |
| 126 | 3 | 48 CAPRI LANE | 03-04-027.01-02-31.00-000 | Unimproved |
| 127 | 3 | 38 CAPRI LANE | 03-04-027.01-02-32.00-000 | Unimproved |
| 128 | 3 | 24 CAPRI LANE | 03-04-027.01-02-33.00-000 | Unimproved |
| 129 | 3 | CORNER LOT | 03-04-027.01-02-34.00-000 | Unimproved |
| 130 | 3 | CORNER LOT | 03-04-027.01-02-35.00-000 | Unimproved |
| 131 | 3 | 27 PRATO LANE | 03-04-027.01-02-36.00-000 | Unimproved |
| 132 | 3 | 43 PRATO LANE | 03-04-027.01-02-37.00-000 | Unimproved |
| 133 | 3 | 67 PRATO LANE | 03-04-027.01-02-38.00-000 | Unimproved |
| 134 | 3 | CORNER LOT | 03-04-027.01-02-39.00-000 | Unimproved |
| 135 | 3 | CORNER LOT | 03-04-027.01-02-40.00-000 | Unimproved |
| 136 | 3 | 72 PRATO LANE | 03-04-027.01-02-41.00-000 | Unimproved |
| 137 | 3 | 58 PRATO LANE | 03-04-027.01-02-42.00-000 | Unimproved |
| 138 | 3 | 46 PRATO LANE | 03-04-027.01-02-43.00-000 | Unimproved |
| 139 | 3 | 30 PRATO LANE | 03-04-027.01-02-44.00-000 | Unimproved |

63 Approved/Improved Lots

330 Approved/unimproved Lots

| Lot No. | Phase No. | Address Kent County Delaware Clayton, DE 19938 | Tax Parcel No. | Land Status |
|---|---|---|---|---|
| 140 | 3 | CORNER LOT | 03-04-027.01-02-45.00-000 | Unimproved |
| 141 | 3 | CORNER LOT | 03-04-027.01-02-46.00-000 | Unimproved |
| 142 | 3 | 223 SORRENTO DRIVE | 03-04-027.01-02-47.00-000 | Unimproved |
| 143 | 3 | 239 SORRENTO DRIVE | 03-04-027.01-02-48.00-000 | Unimproved |
| 144 | 3 | 255 SORRENTO DRIVE | 03-04-027.01-02-49.00-000 | Unimproved |
| 145 | 3 | 275 SORRENTO DRIVE | 03-04-027.01-02-50.00-000 | Unimproved |
| 146 | 3 | 291 SORRENTO DRIVE | 03-04-027.01-02-51.00-000 | Unimproved |
| 147 | 3 | CORNER LOT | 03-04-027.01-02-52.00-000 | Unimproved |
| 148 | 4 | CORNER LOT | 03-04-027.01-02-53.00-000 | Unimproved |
| 149 | 4 | 28 PIAZZA DRIVE | 03-04-027.01-02-54.00-000 | Unimproved |
| 150 | 4 | 40 PIAZZA DRIVE | 03-04-027.01-02-55.00-000 | Unimproved |
| 151 | 4 | 54 PIAZZA DRIVE | 03-04-027.01-02-56.00-000 | Unimproved |
| 152 | 4 | 68 PIAZZA DRIVE | 03-04-027.01-02-57.00-000 | Unimproved |
| 153 | 4 | 80 PIAZZA DRIVE | 03-04-027.01-02-58.00-000 | Unimproved |
| 154 | 4 | 94 PIAZZA DRIVE | 03-04-027.01-02-59.00-000 | Unimproved |
| 155 | 4 | 108 PIAZZA DRIVE | 03-04-027.01-02-60.00-000 | Unimproved |
| 156 | 4 | 120 PIAZZA DRIVE | 03-04-027.01-02-61.00-000 | Unimproved |
| 157 | 4 | 134 PIAZZA DRIVE | 03-04-027.01-02-62.00-000 | Unimproved |
| 158 | 4 | 144 PIAZZA DRIVE | 03-04-027.01-02-63.00-000 | Unimproved |
| 159 | 4 | 156 PIAZZA DRIVE | 03-04-027.01-02-64.00-000 | Unimproved |
| 160 | 4 | 166 PIAZZA DRIVE | 03-04-027.01-02-65.00-000 | Unimproved |
| 161 | 4 | 176 PIAZZA DRIVE | 03-04-027.01-02-66.00-000 | Unimproved |
| 162 | 4 | 186 PIAZZA DRIVE | 03-04-027.01-02-67.00-000 | Unimproved |
| 163 | 4 | 196 PIAZZA DRIVE | 03-04-027.01-02-68.00-000 | Unimproved |
| 164 | 4 | 206 PIAZZA DRIVE | 03-04-027.01-02-69.00-000 | Unimproved |
| 165 | 4 | 218 PIAZZA DRIVE | 03-04-027.01-02-70.00-000 | Unimproved |
| 166 | 4 | 226 PIAZZA DRIVE | 03-04-027.01-02-71.00-000 | Unimproved |
| 167 | 4 | 240 PIAZZA DRIVE | 03-04-027.01-02-72.00-000 | Unimproved |
| 168 | 4 | 256 PIAZZA DRIVE | 03-04-027.01-02-73.00-000 | Unimproved |
| 169 | 4 | 270 PIAZZA DRIVE | 03-04-027.01-02-74.00-000 | Unimproved |
| 170 | 4 | 284 PIAZZA DRIVE | 03-04-027.01-02-75.00-000 | Unimproved |
| 171 | 4 | 298 PIAZZA DRIVE | 03-04-027.01-02-76.00-000 | Unimproved |
| 172 | 4 | 314 PIAZZA DRIVE | 03-04-027.01-04-59.00-000 | Unimproved |
| 173 | 4 | 328 PIAZZA DRIVE | 03-04-027.01-04-58.00-000 | Unimproved |
| 174 | 4 | 342 PIAZZA DRIVE | 03-04-027.01-04-57.00-000 | Unimproved |
| 175 | 4 | CORNER LOT | 03-04-027.01-04-56.00-000 | Unimproved |
| 176 | 4 | CORNER LOT | 03-04-027.01-02-77.00-000 | Unimproved |
| 177 | 4 | 345 PIAZZA DRIVE | 03-04-027.01-02-78.00-000 | Unimproved |
| 178 | 4 | 331 PIAZZA DRIVE | 03-04-027.01-02-79.00-000 | Unimproved |
| 179 | 4 | 317 PIAZZA DRIVE | 03-04-027.01-02-80.00-000 | Unimproved |

63 Approved/Improved Lots

330 Approved/unimproved Lots

| Lot No. | Phase No. | Address Kent County Delaware Clayton, DE 19938 | Tax Parcel No. | Land Status |
|---|---|---|---|---|
| 180 | 4 | 303 PIAZZA DRIVE | 03-04-027.01-02-81.00-000 | Unimproved |
| 181 | 4 | 291 PIAZZA DRIVE | 03-04-027.01-02-82.00-000 | Unimproved |
| 182 | 4 | 277 PIAZZA DRIVE | 03-04-027.01-02-83.00-000 | Unimproved |
| 183 | 4 | 263 PIAZZA DRIVE | 03-04-027.01-02-84.00-000 | Unimproved |
| 184 | 4 | 251 PIAZZA DRIVE | 03-04-027.01-02-85.00-000 | Unimproved |
| 185 | 4 | 237 PIAZZA DRIVE | 03-04-027.01-02-86.00-000 | Unimproved |
| 186 | 4 | 207 PIAZZA DRIVE | 03-04-027.01-02-87.00-000 | Unimproved |
| 187 | 4 | 165 PIAZZA DRIVE | 03-04-027.01-02-88.00-000 | Unimproved |
| 188 | 4 | 137 PIAZZA DRIVE | 03-04-027.01-02-89.00-000 | Unimproved |
| 189 | 4 | 123 PIAZZA DRIVE | 03-04-027.01-02-90.00-000 | Unimproved |
| 190 | 4 | 109 PIAZZA DRIVE | 03-04-027.01-02-91.00-000 | Unimproved |
| 191 | 4 | 95 PIAZZA DRIVE | 03-04-027.01-02-92.00-000 | Unimproved |
| 192 | 4 | 81 PIAZZA DRIVE | 03-04-027.01-02-93.00-000 | Unimproved |
| 193 | 4 | 69 PIAZZA DRIVE | 03-04-027.01-02-94.00-000 | Unimproved |
| 194 | 4 | 55 PIAZZA DRIVE | 03-04-027.01-02-95.00-000 | Unimproved |
| 195 | 4 | 41 PIAZZA DRIVE | 03-04-027.01-02-96.00-000 | Unimproved |
| 196 | 4 | 29 PIAZZA DRIVE | 03-04-027.01-02-97.00-000 | Unimproved |
| 197 | 4 | CORNER LOT | 03-04-027.01-02-98.00-000 | Unimproved |
| 198 | 5 | 57 TREVI DRIVE | 03-04-027.01-03-01.00-000 | Unimproved |
| 199 | 5 | 67 TREVI DRIVE | 03-04-027.01-03-02.00-000 | Unimproved |
| 200 | 5 | 83 TREVI DRIVE | 03-04-027.01-03-03.00-000 | Unimproved |
| 201 | 5 | 95 TREVI DRIVE | 03-04-027.01-03-04.00-000 | Unimproved |
| 202 | 5 | 109 TREVI DRIVE | 03-04-027.01-03-05.00-000 | Unimproved |
| 203 | 5 | 123 TREVI DRIVE | 03-04-027.01-03-06.00-000 | Unimproved |
| 204 | 5 | 135 TREVI DRIVE | 03-04-027.01-03-07.00-000 | Unimproved |
| 205 | 5 | 149 TREVI DRIVE | 03-04-027.01-03-08.00-000 | Unimproved |
| 206 | 5 | 159 TREVI DRIVE | 03-04-027.01-03-09.00-000 | Unimproved |
| 207 | 5 | 169 TREVI DRIVE | 03-04-027.01-03-10.00-000 | Unimproved |
| 208 | 5 | 179 TREVI DRIVE | 03-04-027.01-03-11.00-000 | Unimproved |
| 209 | 5 | 191 TREVI DRIVE | 03-04-027.01-03-12.00-000 | Unimproved |
| 210 | 5 | 201 TREVI DRIVE | 03-04-027.01-03-13.00-000 | Unimproved |
| 211 | 5 | 215 TREVI DRIVE | 03-04-027.01-03-14.00-000 | Unimproved |
| 212 | 5 | 227 TREVI DRIVE | 03-04-027.01-03-15.00-000 | Unimproved |
| 213 | 5 | 241 TREVI DRIVE | 03-04-027.01-03-16.00-000 | Unimproved |
| 214 | 5 | 255 TREVI DRIVE | 03-04-027.01-03-17.00-000 | Unimproved |
| 215 | 5 | 267 TREVI DRIVE | 03-04-027.01-03-18.00-000 | Unimproved |
| 216 | 7 | 281 TREVI DRIVE | 03-04-027.01-03-19.00-000 | Unimproved |
| 217 | 7 | 293 TREVI DRIVE | 03-04-027.01-03-20.00-000 | Unimproved |
| 218 | 7 | 307 TREVI DRIVE | 03-04-027.01-03-21.00-000 | Unimproved |
| 219 | 7 | 319 TREVI DRIVE | 03-04-027.01-03-22.00-000 | Unimproved |

63 Approved/Improved Lots

330 Approved/unimproved Lots

| Lot No. | Phase No. | Address Kent County Delaware Clayton, DE 19938 | Tax Parcel No. | Land Status |
|---|---|---|---|---|
| 220 | 7 | 333 TREVI DRIVE | 03-04-027.01-03-23.00-000 | Unimproved |
| 221 | 7 | 347 TREVI DRIVE | 03-04-027.01-03-24.00-000 | Unimproved |
| 222 | 7 | 361 TREVI DRIVE | 03-04-027.01-03-25.00-000 | Unimproved |
| 223 | 7 | 377 TREVI DRIVE | 03-04-027.01-03-84.00-000 | Unimproved |
| 224 | 7 | 389 TREVI DRIVE | 03-04-027.01-03-85.00-000 | Unimproved |
| 225 | 7 | 403 TREVI DRIVE | 03-04-027.01-03-86.00-000 | Unimproved |
| 226 | 7 | 417 TREVI DRIVE | 03-04-027.01-03-87.00-000 | Unimproved |
| 227 | 7 | 431 TREVI DRIVE | 03-04-027.01-03-88.00-000 | Unimproved |
| 228 | 7 | CORNER LOT | 03-04-027.01-03-89.00-000 | Unimproved |
| 229 | 7 | 88 PADUA ROAD | 03-04-027.01-03-90.00-000 | Unimproved |
| 230 | 7 | 76 PADUA ROAD | 03-04-027.01-03-91.00-000 | Unimproved |
| 231 | 7 | 66 PADUA ROAD | 03-04-027.01-03-92.00-000 | Unimproved |
| 232 | 7 | 56 PADUA ROAD | 03-04-027.01-03-93.00-000 | Unimproved |
| 233 | 7 | 44 PADUA ROAD | 03-04-027.01-03-94.00-000 | Unimproved |
| 234 | 7 | 34 PADUA ROAD | 03-04-027.01-03-95.00-000 | Unimproved |
| 235 | 7 | CORNER LOT | 03-04-027.01-04-01.00-000 | Unimproved |
| 236 | 7 | 36 TUSCANY DRIVE | 03-04-027.01-04-02.00-000 | Unimproved |
| 237 | 7 | CORNER LOT | 03-04-027.01-04-03.00-000 | Unimproved |
| 238 | 7 | 248 TRENTINO TERRACE | 03-04-027.01-04-04.00-000 | Unimproved |
| 239 | 6 | 277 TRENTINO TERRACE | 03-04-027.01-04-05.00-000 | Unimproved |
| 240 | 6 | 289 TRENTINO TERRACE | 03-04-027.01-04-06.00-000 | Unimproved |
| 241 | 6 | 303 TRENTINO TERRACE | 03-04-027.01-04-07.00-000 | Unimproved |
| 242 | 6 | 317 TRENTINO TERRACE | 03-04-027.01-04-08.00-000 | Unimproved |
| 243 | 6 | 331 TRENTINO TERRACE | 03-04-027.01-04-09.00-000 | Unimproved |
| 244 | 6 | 345 TRENTINO TERRACE | 03-04-027.01-04-10.00-000 | Unimproved |
| 245 | 6 | 357 TRENTINO TERRACE | 03-04-027.01-04-11.00-000 | Unimproved |
| 246 | 6 | 373 TRENTINO TERRACE | 03-04-027.01-04-12.00-000 | Unimproved |
| 247 | 6 | 401 TRENTINO TERRACE | 03-04-027.01-04-13.00-000 | Unimproved |
| 248 | 5 | CORNER LOT | 03-04-027.01-03-45.00-000 | Unimproved |
| 249 | 5 | CORNER LOT | 03-04-027.01-03-44.00-000 | Unimproved |
| 250 | 5 | 30 FERRARA DRIVE | 03-04-027.01-03-43.00-000 | Unimproved |
| 251 | 6 | 40 FERRARA DRIVE | 03-04-027.01-03-42.00-000 | Unimproved |
| 252 | 6 | 52 FERRARA DRIVE | 03-04-027.01-03-41.00-000 | Unimproved |
| 253 | 6 | 66 FERRARA DRIVE | 03-04-027.01-03-40.00-000 | Unimproved |
| 254 | 6 | 80 FERRARA DRIVE | 03-04-027.01-03-39.00-000 | Unimproved |
| 255 | 6 | 94 FERRARA DRIVE | 03-04-027.01-03-38.00-000 | Unimproved |
| 256 | 6 | 106 FERRARA DRIVE | 03-04-027.01-03-37.00-000 | Unimproved |
| 257 | 6 | 118 FERRARA DRIVE | 03-04-027.01-03-36.00-000 | Unimproved |
| 258 | 6 | CORNER LOT | 03-04-027.01-03-35.00-000 | Unimproved |
| 259 | 5 | CORNER LOT | 03-04-027.01-03-26.00-000 | Unimproved |

63 Approved/Improved Lots

330 Approved/unimproved Lots

| Lot No. | Phase No. | Address Kent County Delaware Clayton, DE 19938 | Tax Parcel No. | Land Status |
|---------|-----------|------------------------------------------------|----------------|-------------|
| 260 | 5 | 208 TREVI DRIVE | 03-04-027.01-03-27.00-000 | Unimproved |
| 261 | 5 | 176 TREVI DRIVE | 03-04-027.01-03-28.00-000 | Unimproved |
| 262 | 5 | 142 TREVI DRIVE | 03-04-027.01-03-29.00-000 | Unimproved |
| 263 | 5 | 130 TREVI DRIVE | 03-04-027.01-03-30.00-000 | Unimproved |
| 264 | 5 | 116 TREVI DRIVE | 03-04-027.01-03-31.00-000 | Unimproved |
| 265 | 5 | 85 FERRARA DRIVE | 03-04-027.01-03-32.00-000 | Unimproved |
| 266 | 5 | 99 FERRARA DRIVE | 03-04-027.01-03-33.00-000 | Unimproved |
| 267 | 5 | 113 FERRARA DRIVE | 03-04-027.01-03-34.00-000 | Unimproved |
| 268 | 6 | CORNER LOT | 03-04-027.01-03-56.00-000 | Unimproved |
| 269 | 6 | 121 LUCANO DRIVE | 03-04-027.01-03-55.00-000 | Unimproved |
| 270 | 6 | 107 LUCANO DRIVE | 03-04-027.01-03-54.00-000 | Unimproved |
| 271 | 6 | 91 LUCANO DRIVE | 03-04-027.01-03-53.00-000 | Unimproved |
| 272 | 6 | 75 LUCANO DRIVE | 03-04-027.01-03-52.00-000 | Unimproved |
| 273 | 6 | 61 LUCANO DRIVE | 03-04-027.01-03-51.00-000 | Unimproved |
| 274 | 6 | 47 LUCANO DRIVE | 03-04-027.01-03-50.00-000 | Unimproved |
| 275 | 5 | 33 LUCANO DRIVE | 03-04-027.01-03-49.00-000 | Unimproved |
| 276 | 5 | CORNER LOT | 03-04-027.01-03-48.00-000 | Unimproved |
| 277 | 5 | 352 TRENTINO TERRACE | 03-04-027.01-03-47.00-000 | Unimproved |
| 278 | 5 | 366 TRENTINO TERRACE | 03-04-027.01-03-46.00-000 | Unimproved |
| 279 | 7 | CORNER LOT | 03-04-027.01-03-65.00-000 | Unimproved |
| 280 | 7 | 26 LUCANO DRIVE | 03-04-027.01-03-64.00-000 | Unimproved |
| 281 | 7 | 44 LUCANO DRIVE | 03-04-027.01-03-63.00-000 | Unimproved |
| 282 | 7 | 68 LUCANO DRIVE | 03-04-027.01-03-62.00-000 | Unimproved |
| 283 | 7 | 82 LUCANO DRIVE | 03-04-027.01-03-61.00-000 | Unimproved |
| 284 | 7 | 96 LUCANO DRIVE | 03-04-027.01-03-60.00-000 | Unimproved |
| 285 | 7 | 108 LUCANO DRIVE | 03-04-027.01-03-59.00-000 | Unimproved |
| 286 | 7 | 122 LUCANO DRIVE | 03-04-027.01-03-58.00-000 | Unimproved |
| 287 | 7 | CORNER LOT | 03-04-027.01-03-57.00-000 | Unimproved |
| 288 | 7 | CORNER LOT | 03-04-027.01-03-74.00-000 | Unimproved |
| 289 | 7 | 109 TUSCANY DRIVE | 03-04-027.01-03-73.00-000 | Unimproved |
| 290 | 7 | 95 TUSCANY DRIVE | 03-04-027.01-03-72.00-000 | Unimproved |
| 291 | 7 | 81 TUSCANY DRIVE | 03-04-027.01-03-71.00-000 | Unimproved |
| 292 | 7 | 69 TUSCANY DRIVE | 03-04-027.01-03-70.00-000 | Unimproved |
| 293 | 7 | 53 TUSCANY DRIVE | 03-04-027.01-03-69.00-000 | Unimproved |
| 294 | 7 | 41 TUSCANY DRIVE | 03-04-027.01-03-68.00-000 | Unimproved |
| 295 | 7 | 27 TUSCANY DRIVE | 03-04-027.01-03-67.00-000 | Unimproved |
| 296 | 7 | CORNER LOT | 03-04-027.01-03-66.00-000 | Unimproved |
| 297 | 7 | CORNER LOT | 03-04-027.01-03-78.00-000 | Unimproved |
| 298 | 7 | 94 TUSCANY DRIVE | 03-04-027.01-03-77.00-000 | Unimproved |
| 299 | 7 | 108 TUSCANY DRIVE | 03-04-027.01-03-76.00-000 | Unimproved |

63 Approved/Improved Lots

330 Approved/unimproved Lots

| Lot No. | Phase No. | Address Kent County Delaware Clayton, DE 19938 | Tax Parcel No. | Land Status |
|---|---|---|---|---|
| 300 | 7 | CORNER LOT | 03-04-027.01-03-75.00-000 | Unimproved |
| 301 | 7 | 372 TREVI DRIVE | 03-04-027.01-03-83.00-000 | Unimproved |
| 302 | 7 | CORNER LOT | 03-04-027.01-03-82.00-000 | Unimproved |
| 303 | 7 | 87 PADUA ROAD | 03-04-027.01-03-81.00-000 | Unimproved |
| 304 | 7 | 61 PADUA ROAD | 03-04-027.01-03-80.00-000 | Unimproved |
| 305 | 7 | 33 PADUA ROAD | 03-04-027.01-03-79.00-000 | Unimproved |
| 306 | 6 | 25 TRENTINO TERRACE | 03-04-027.01-04-14.00-000 | Unimproved |
| 307 | 6 | 55 TRENTINO TERRACE | 03-04-027.01-04-15.00-000 | Unimproved |
| 308 | 6 | 69 TRENTINO TERRACE | 03-04-027.01-04-16.00-000 | Unimproved |
| 309 | 6 | 83 TRENTINO TERRACE | 03-04-027.01-04-17.00-000 | Unimproved |
| 310 | 6 | 97 TRENTINO TERRACE | 03-04-027.01-04-18.00-000 | Unimproved |
| 311 | 6 | 111 TRENTINO TERRACE | 03-04-027.01-04-19.00-000 | Unimproved |
| 312 | 6 | 125 TRENTINO TERRACE | 03-04-027.01-04-20.00-000 | Unimproved |
| 313 | 6 | 137 TRENTINO TERRACE | 03-04-027.01-04-21.00-000 | Unimproved |
| 314 | 6 | 151 TRENTINO TERRACE | 03-04-027.01-04-22.00-000 | Unimproved |
| 315 | 8 | 198 TRENTINO TERRACE | 03-04-027.01-04-23.00-000 | Unimproved |
| 316 | 8 | 188 TRENTINO TERRACE | 03-04-027.01-04-24.00-000 | Unimproved |
| 317 | 8 | 178 TRENTINO TERRACE | 03-04-027.01-04-25.00-000 | Unimproved |
| 318 | 8 | 168 TRENTINO TERRACE | 03-04-027.01-04-26.00-000 | Unimproved |
| 319 | 8 | 156 TRENTINO TERRACE | 03-04-027.01-04-27.00-000 | Unimproved |
| 320 | 8 | 142 TRENTINO TERRACE | 03-04-027.01-04-28.00-000 | Unimproved |
| 321 | 8 | CORNER LOT | 03-04-027.01-04-29.00-000 | Unimproved |
| 322 | 8 | CORNER LOT | 03-04-027.01-04-30.00-000 | Unimproved |
| 323 | 8 | 27 POMPEI DRIVE | 03-04-027.01-04-31.00-000 | Unimproved |
| 324 | 8 | 43 POMPEI DRIVE | 03-04-027.01-04-32.00-000 | Unimproved |
| 325 | 8 | 57 POMPEI DRIVE | 03-04-027.01-04-33.00-000 | Unimproved |
| 326 | 8 | 71 POMPEI DRIVE | 03-04-027.01-04-34.00-000 | Unimproved |
| 327 | 8 | CORNER LOT | 03-04-027.01-05-31.00-000 | Unimproved |
| 328 | 8 | 426 PALERMO DRIVE | 03-04-027.01-05-30.00-000 | Unimproved |
| 329 | 8 | 414 PALERMO DRIVE | 03-04-027.01-05-29.00-000 | Unimproved |
| 330 | 8 | 398 PALERMO DRIVE | 03-04-027.01-05-28.00-000 | Unimproved |
| 331 | 8 | 386 PALERMO DRIVE | 03-04-027.01-05-27.00-000 | Unimproved |
| 332 | 8 | 374 PALERMO DRIVE | 03-04-027.01-05-26.00-000 | Unimproved |
| 333 | 8 | 360 PALERMO DRIVE | 03-04-027.01-05-25.00-000 | Unimproved |
| 334 | 8 | 346 PALERMO DRIVE | 03-04-027.01-05-24.00-000 | Unimproved |
| 335 | 8 | 334 PALERMO DRIVE | 03-04-027.01-05-23.00-000 | Unimproved |
| 336 | 8 | 320 PALERMO DRIVE | 03-04-027.01-05-22.00-000 | Unimproved |
| 337 | 8 | 308 PALERMO DRIVE | 03-04-027.01-05-21.00-000 | Unimproved |
| 338 | 8 | 298 PALERMO DRIVE | 03-04-027.01-05-20.00-000 | Unimproved |
| 339 | 8 | 288 PALERMO DRIVE | 03-04-027.01-05-19.00-000 | Unimproved |

63 Approved/Improved Lots

330 Approved/unimproved Lots

| Lot No. | Phase No. | Address<br>Kent County Delaware<br>Clayton, DE 19938 | Tax Parcel No. | Land Status |
|---|---|---|---|---|
| 340 | 8 | 278 PALERMO DRIVE | 03-04-027.01-05-18.00-000 | Unimproved |
| 341 | 8 | 266 PALERMO DRIVE | 03-04-027.01-05-17.00-000 | Unimproved |
| 342 | 8 | 254 PALERMO DRIVE | 03-04-027.01-05-16.00-000 | Unimproved |
| 343 | 8 | 240 PALERMO DRIVE | 03-04-027.01-05-15.00-000 | Unimproved |
| 344 | 8 | 228 PALERMO DRIVE | 03-04-027.01-05-14.00-000 | Unimproved |
| 345 | 8 | 214 PALERMO DRIVE | 03-04-027.01-05-13.00-000 | Unimproved |
| 346 | 8 | 204 PALERMO DRIVE | 03-04-027.01-05-12.00-000 | Unimproved |
| 347 | 8 | 192 PALERMO DRIVE | 03-04-027.01-04-74.00-000 | Unimproved |
| 348 | 8 | 182 PALERMO DRIVE | 03-04-027.01-04-73.00-000 | Unimproved |
| 349 | 8 | 172 PALERMO DRIVE | 03-04-027.01-04-72.00-000 | Unimproved |
| 350 | 8 | 160 PALERMO DRIVE | 03-04-027.01-04-71.00-000 | Unimproved |
| 351 | 6 | 146 PALERMO DRIVE | 03-04-027.01-04-70.00-000 | Unimproved |
| 352 | 6 | 132 PALERMO DRIVE | 03-04-027.01-04-69.00-000 | Unimproved |
| 353 | 6 | 118 PALERMO DRIVE | 03-04-027.01-04-68.00-000 | Unimproved |
| 354 | 6 | 106 PALERMO DRIVE | 03-04-027.01-04-67.00-000 | Unimproved |
| 355 | 6 | 92 PALERMO DRIVE | 03-04-027.01-04-66.00-000 | Unimproved |
| 356 | 6 | 78 PALERMO DRIVE | 03-04-027.01-04-65.00-000 | Unimproved |
| 357 | 6 | 66 PALERMO DRIVE | 03-04-027.01-04-64.00-000 | Unimproved |
| 358 | 6 | 56 PALERMO DRIVE | 03-04-027.01-04-63.00-000 | Unimproved |
| 359 | 6 | 44 PALERMO DRIVE | 03-04-027.01-04-62.00-000 | Unimproved |
| 360 | 6 | 26 PALERMO DRIVE | 03-04-027.01-04-61.00-000 | Unimproved |
| 361 | 6 | CORNER LOT | 03-04-027.01-04-60.00-000 | Unimproved |
| 362 | 6 | CORNER LOT | 03-04-027.01-04-42.00-000 | Unimproved |
| 363 | 6 | 62 TRENTINO TERRACE | 03-04-027.01-04-43.00-000 | Unimproved |
| 364 | 6 | 76 TRENTINO TERRACE | 03-04-027.01-04-44.00-000 | Unimproved |
| 365 | 6 | 90 TRENTINO TERRACE | 03-04-027.01-04-45.00-000 | Unimproved |
| 366 | 6 | CORNER LOT | 03-04-027.01-04-46.00-000 | Unimproved |
| 367 | 6 | 38 MAGGIO DRIVE | 03-04-027.01-04-47.00-000 | Unimproved |
| 368 | 6 | 56 MAGGIO DRIVE | 03-04-027.01-04-48.00-000 | Unimproved |
| 369 | 6 | 72 MAGGIO DRIVE | 03-04-027.01-04-49.00-000 | Unimproved |
| 370 | 6 | CORNER LOT | 03-04-027.01-04-50.00-000 | Unimproved |
| 371 | 6 | 65 GENOA DRIVE | 03-04-027.01-04-51.00-000 | Unimproved |
| 372 | 6 | 51 GENOA DRIVE | 03-04-027.01-04-52.00-000 | Unimproved |
| 373 | 6 | 37 GENOA DRIVE | 03-04-027.01-04-53.00-000 | Unimproved |
| 374 | 6 | 23 GENOA DRIVE | 03-04-027.01-04-54.00-000 | Unimproved |
| 375 | 6 | CORNER LOT | 03-04-027.01-04-55.00-000 | Unimproved |
| 376 | 8 | CORNER LOT | 03-04-027.01-04-75.00-000 | Unimproved |
| 377 | 8 | 40 GENOA DRIVE | 03-04-027.01-04-76.00-000 | Unimproved |
| 378 | 8 | 54 GENOA DRIVE | 03-04-027.01-04-77.00-000 | Unimproved |
| 379 | 8 | 72 GENOA DRIVE | 03-04-027.01-04-78.00-000 | Unimproved |

63 Approved/Improved Lots

330 Approved/unimproved Lots

| Lot No. | Phase No. | Address Kent County Delaware Clayton, DE 19938 | Tax Parcel No. | Land Status |
|---|---|---|---|---|
| 380 | 8 | 86 GENOA DRIVE | 03-04-027.01-04-79.00-000 | Unimproved |
| 381 | 8 | 100 GENOA DRIVE | 03-04-027.01-04-80.00-000 | Unimproved |
| 382 | 8 | 114 GENOA DRIVE | 03-04-027.01-04-81.00-000 | Unimproved |
| 383 | 8 | CORNER LOT | 03-04-027.01-04-82.00-000 | Unimproved |
| 384 | 8 | CORNER LOT | 03-04-027.01-04-83.00-000 | Unimproved |
| 385 | 8 | 95 NAPLES DRIVE | 03-04-027.01-04-84.00-000 | Unimproved |
| 386 | 8 | 81 NAPLES DRIVE | 03-04-027.01-04-85.00-000 | Unimproved |
| 387 | 8 | 69 NAPLES DRIVE | 03-04-027.01-04-86.00-000 | Unimproved |
| 388 | 8 | 55 NAPLES DRIVE | 03-04-027.01-04-87.00-000 | Unimproved |
| 389 | 8 | 39 NAPLES DRIVE | 03-04-027.01-04-88.00-000 | Unimproved |
| 390 | 8 | 27 NAPLES DRIVE | 03-04-027.01-04-89.00-000 | Unimproved |
| 391 | 8 | CORNER LOT | 03-04-027.01-04-90.00-000 | Unimproved |
| 392 | 8 | CORNER LOT | 03-04-027.01-04-91.00-000 | Unimproved |
| 393 | 8 | 30 NAPLES DRIVE | 03-04-027.01-04-92.00-000 | Unimproved |
| 394 | 8 | 44 NAPLES DRIVE | 03-04-027.01-04-93.00-000 | Unimproved |
| 395 | 8 | 58 NAPLES DRIVE | 03-04-027.01-05-01.00-000 | Unimproved |
| 396 | 8 | 72 NAPLES DRIVE | 03-04-027.01-05-02.00-000 | Unimproved |
| 397 | 8 | 86 NAPLES DRIVE | 03-04-027.01-05-03.00-000 | Unimproved |
| 398 | 8 | 100 NAPLES DRIVE | 03-04-027.01-05-04.00-000 | Unimproved |
| 399 | 8 | CORNER LOT | 03-04-027.01-05-05.00-000 | Unimproved |
| 400 | 8 | 291 PALERMO DRIVE | 03-04-027.01-05-06.00-000 | Unimproved |
| 401 | 8 | 263 PALERMO DRIVE | 03-04-027.01-05-07.00-000 | Unimproved |
| 402 | 8 | 245 PALERMO DRIVE | 03-04-027.01-05-08.00-000 | Unimproved |
| 403 | 8 | 231 PALERMO DRIVE | 03-04-027.01-05-09.00-000 | Unimproved |
| 404 | 8 | 217 PALERMO DRIVE | 03-04-027.01-05-10.00-000 | Unimproved |
| 405 | 8 | 189 PALERMO DRIVE | 03-04-027.01-05-11.00-000 | Unimproved |
| 406 | 8 | CORNER LOT | 03-04-027.01-04-37.00-000 | Unimproved |
| 407 | 8 | 117 GENOA DRIVE | 03-04-027.01-04-38.00-000 | Unimproved |
| 408 | 8 | CORNER LOT | 03-04-027.01-04-39.00-000 | Unimproved |
| 409 | 8 | 71 MAGGIO DRIVE | 03-04-027.01-04-40.00-000 | Unimproved |
| 410 | 8 | CORNER LOT | 03-04-027.01-04-41.00-000 | Unimproved |
| 411 | 8 | CORNER LOT | 03-04-027.01-04-35.00-000 | Unimproved |
| 412 | 8 | 425 PALERMO DRIVE | 03-04-027.01-04-36.00-000 | Unimproved |

| OPEN SPACE TAX PARCEL NUMBERS: | | |
|---|---|---|
| Phase | Address | Tax Parcel No. |
| 1 | PALERMO DRIVE | 03-04-027.01-04-96.00-000 |

| OPEN SPACE TAX PARCEL NUMBERS: | | |
|---|---|---|
| **Phase** | **Address** | **Tax Parcel No.** |
| 1 | SAN MARINO DRIVE #1 | 03-04-027.01-01-97.00-000 |
| 1 | SAN MARINO DRIVE #2 | 03-04-027.01-01-96.00-000 |
| 3-8 | SORRENTO DRIVE #1 | 03-04-027.01-04-95.00-000 |
| 3-8 | SORRENTO DRIVE #2 | 03-04-027.01-04-94.00-000 |
| 3-8 | SORRENTO DRIVE #3 | 03-04-027.01-03-99.00-000 |
| 3-8 | SORRENTO DRIVE #4 | 03-04-027.01-02-99.00-000 |
| 3-8 | SORRENTO DRIVE #5 | 03-04-027.01-01-99.00-000 |
| 3-8 | SORRENTO DRIVE #6 | 03-04-027.01-01-98.00-000 |
| 3-8 | TRENTINO TERRACE #1 | 03-04-027.01-04-99.00-000 |
| 3-8 | TRENTINO TERRACE #2 | 03-04-027.01-04-98.00-000 |
| 3-8 | TRENTINO TERRACE #3 | 03-04-027.01-04-97.00-000 |
| 3-8 | TREVI DRIVE #1 | 03-04-027.01-03-98.00-000 |
| 3-8 | TREVI DRIVE #2 | 03-04-027.01-03-97.00-000 |
| 3-8 | TREVI DRIVE #3 | 03-04-027.01-03-96.00-000 |